(50 South. 846.)

No. 17,898.

DAIGLE et al. v. OPELOUSAS, G. & N. E. RY. CO.

(Dec. 13, 1909. Rehearing Denied Jan. 3, 1910.)

PARISHES—PUBLIC AID TO CORPORATIONS—
"WARD."

Under article 270 of the Constitution of 1898, the police jury is without power to order an election for special taxes in aid of a railway enterprise in a justice of the peace ward forming a part of a regular parish ward. The "ward" mentioned in said article is the political subdivision of the parish commonly called a "police jury ward."

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 231–236; Dec. Dig. § 154.*]

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Edward Daigle and others against the Opelousas, Gulf & Northeastern Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Lewis & Lewis, for appellant. Story & Pugh, for appellees.

LAND, J. Plaintiffs, as property owners and taxpayers, entitled to vote, seek to annul a certain special tax of five mills, for ten years, claimed to have been voted by a majority of the taxpayers of the Third justice ward of the parish of Acadia, in aid of the defendant railroad company.

The election was held in June, 1905, and the returns were promulgated by the police jury of the parish of Acadia. The taxes were not to be levied until after the completion and operation of the defendant's railroad through said Third justice ward.

The railroad was completed and operated in the year 1907, and the special tax was extended by the assessor on the rolls of 1908 at the request of counsel for the defendant corporation. It is admitted, however, that the police jury never passed any ordinance levying said special tax for the year 1908.

Plaintiffs, who had either voted against or opposed said special tax, paid the same under protest to avoid a sale of their property, and then instituted the present suit to annul and avoid said special tax as illegal and unconstitutional, and to restrain its collection.

It is alleged that Act No. 202, p. 483, of 1898, to carry into effect article 270 of the Constitution of 1898, is unconstitutional, be-

cause said act provides for the imposition of a special tax in aid of railroad enterprises when carried by a majority in number and amount of those voting, while said article requires a majority of all the property taxpayers in number and amount entitled to vote at the election.

It is further alleged that article 270 of the Constitution of 1898 in authorizing an election for voting special taxes in parishes, wards, and municipalities does not include "a justice of the peace ward" forming only a part of a police jury ward.

Sundry alleged irregularities and nullities are set forth in the petition as to the conduct and result of the election.

The defendant pleaded the limitation of three months provided by section 2 of Act No. 106, p. 140, of 1892, and that the plaintiffs were estopped by voting at the election and inducing others to vote thereat, and by having delayed their suit until long after the defendant's railroad was completed and in operation through the same ward and its entire length.

Reserving the benefit of their pleas, the defendant company answered, pleading the general issue, and averring that relying on the result of the election as promulgated, and on the good faith of the taxpayers of the Third justice ward, and of other wards and municipalities which had voted similar taxes, respondent went to work and constructed and completed its road from Mellville to Crowley, and, acting on the presumption of the legality of said special taxes, had incurred an indebtedness exceeding $1,000,000, to secure which mortgage bonds had been issued and had passed into the hands of innocent third parties.

There was judgment in favor of the plaintiffs, and the defendant company has appealed.

The judge below held that the special tax purported to have been voted was null and void, because the police jury had no authority in law to order an election for such tax in the Third justice of the peace ward of the parish of Acadia, and also held that Act No. 202, p. 483, of 1898, as amended by Act No. 23, p. 26, of 1904, was unconstitutional, null, and void, as being in conflict with article 270 of the Constitution of 1898.

The first question in the case is whether the police jury of the parish of Acadia had the power to order the tax election in the Third justice ward. The solution of this question depends on the construction of the word "ward" as used in article 270 of the Constitution of 1898, which reads as follows:

"Art. 270. The General Assembly shall have power to enact general laws authorizing the parochial, ward and municipal authorities of the state by a vote of the majority of the property taxpayers in number entitled to vote under the provisions of this Constitution, and in value, to levy special taxes in aid of public improvements or railway enterprises; provided, that such tax shall not exceed the rate of five mills per annum, nor extend for a longer term than ten years; and provided further, that no taxpayer shall be permitted to vote at such election unless he shall have been assessed in the parish, ward or municipality to be affected for property for the year previous."

This article names three political subdivisions of the state each represented by some authority capable of levying and collecting taxes.

In the case of a police jury ward, this authority is necessarily the police jury composed of members elected from the different wards of the parish. Hence the "ward" mentioned in the said article is the political ward, bearing the same relation to the parish that the parish bears towards the state. It is to be noted that the article places the "ward" on the same plane as the parish and municipality, and names it as second in the order of importance. In other words, the ward referred to is one which may include a village, town, or city.

The Constitution of 1898 uses the word "ward" in several other articles, and it is

evident from the context that the police jury ward is intended.

Article 96 provides for the abolition of the office of justice of the peace in wards containing cities of more than 5,000 inhabitants. Article 197 requires the applicant for registration to state the precinct and ward in which he resides, and articles 210 and 222 uses the term "ward" in association with the state, parish, and municipality in connection with the election and amotion of officers. Article 231 refers to cases in which aid had been voted prior to 1898 by any parish, ward, or municipality to any railroad not then constructed. It is to be noted that by Act No. 153, p. 191, of 1894, the Legislature authorized special elections in any parish, parish ward, city, or incorporated town in aid of railway enterprises. Article 231 evidently refers to aid voted under the said statute.

Article 232 of the Constitution of 1898 empowers any parish, municipal corporation, ward, or school district to levy special taxes under certain conditions. Article 243 provides that the same rules relating to the collection of state taxes and tax sales shall also apply to the collection of parish, district, municipal, board, and ward taxes.

And article 291 authorizes police juries to levy special taxes for road and bridge purposes on "the property of the parish or any ward thereof" when voted by the taxpayers of the ward or parish.

It follows that the "ward" mentioned in article 270 of the Constitution of 1898 is the political entity and taxing district known as the "police jury ward." Article 225 of the Constitution provides that:

"Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax."

Hence the police jury is without power to levy a ward tax on a part of the taxable property in a ward.

Act No. 202, p. 483, of 1898, to carry into effect article 270 of the Constitution of 1898, does not authorize special elections for special railroad taxes in a part of a ward or a part of a parish or a part of a municipality, but treats each of these three political subdivisions as a whole in the matter of such taxation. The first section requires the written petition of one-third of the property taxpayers of the ward entitled to vote therein.

Now, what is a justice of the peace ward? It is the territory over which a magistrate exercises his judicial functions. Such territory may be, as in the instant case, a part of a ward, or a part of two wards, or coterminous with a particular ward. A justice of the peace ward is the smallest judicial district, and has no more connection with taxation than any other judicial district. The term "ward," as applied to the territorial jurisdiction of a court, is a misnomer. Bouvier says that the term "now indicates a subdivision of a city." Black gives a like definition, and adds, "for purposes of police, sanitary regulations, prevention of fires, elections," etc. We have such wards in our towns and cities for similar administrative purposes. But the same term is used in this state to indicate political subdivisions of a parish similar to the "towns" or "townships" in our sister states possessing in a greater or less degree powers of local self-government. Black.

As "the power to tax is the power to destroy," the power delegated by the Constitution should be strictly construed, and cannot be extended by mere inference and implication. In order to exercise the taxing power, whether general or special, the district to be affected must be fixed, and the taxation must be equal and uniform throughout its territorial limits. Article 270 fixes three taxing districts under the names of the parish, ward, and municipality. As a par-

ish tax, whether general or special, cannot be levied on a part of a parish, so a ward or city tax cannot be levied on a part of a ward or city. The enabling act of 1898 makes no provision whatever for the levy of special taxes on a part of the property in a parish, ward, or city. Section 7 of Act No. 202, p. 484, of 1898, provides in express terms that the special taxes shall be levied and collected "upon all taxable property within said parish, ward or municipality." These words ex vi termini exclude the separate taxation of a part of the property in such political subdivisions.

While, as a matter of logic, the whole includes every part, this proposition is not true where the organic law requires taxation to be equal and uniform throughout the territorial limits of the authority levying the tax. If, as must be conceded, the word "ward" as used in the Constitution is broad enough to include a police jury ward, the taxation must be equal and uniform throughout the limits of the ward.

After a thorough consideration of the case, we reach the conclusion that the term "ward," as used in article 270 of the Constitution, means nothing more or less than the well-known political subdivision called a "police jury ward." There is no warrant for extending the term to any other kind of wards.

If this conclusion be correct, the police jury of the parish was absolutely without authority to order the election, and the situation is the same as if no election had been held, and prescription is not applicable. Esteves v. Board, etc., 121 La. 991, 46 South. 992. In Dimmick v. Opelousas, G. & N. E. Ry. Co., 123 La. 123, 48 South. 767, the court drew a clear distinction between a suit contesting an election and a suit to annul a tax voted at a void election. If a void election cannot be cured by prescrip-

tion, it cannot be cured by the mere inaction of taxpayers.

There can be no ground of equitable estoppel against the plaintiffs, who from the beginning opposed the tax, and most of whom voted against its imposition.

If the conclusion on this branch of the case be correct, it is useless to consider the other questions raised by counsel and discussed by them with much learning and ability in oral arguments and briefs.

For the reasons stated, the judgment is affirmed.

See dissenting opinion of PROVOSTY, J., 50 South. 848.