ST. PAUL, J.
Under the provisions of Act 152 of 1920, § 1, the school boards of Evangeline and Acadia parishes undertook to create the “Basile school district,” composed of adjoining parts of the two parishes, having in view a bond issue for the purpose of erecting a public school at Basile in Evangeline parish for the school children of said district. The school board of Evangeline parish was designated the governing authority for said district under the provisions of section 3 of said act.
Said governing authority thereupon authorized an election to take the sense of the qualified taxpayers of said district as to said bond issue and a property tax in support thereof, which election was held in due course and resulted in favor of said, bond issue and tax.
More than 60 clays after the promulgation of the result aforesaid, the plaintiffs (resident and taxpayers in said district) brought this suit to annul and set aside said election, as also the proposed bond issue based thereon and tax in support thereof.
I.
Plaintiffs attack Act 152 of 1920 as being in conflict with (the spirit of) article 250 of the Constitutions of 1898 and 1913, and article 12, § 10, of the Constitution of 1921; which (they claim) contemplate that, in school matters, the integrity of each parish shall be preserved, and that each parish school board, with its own parish superintendent of education, shall remain the sole authority in the school mátters of said parish, subject only to the state board of education.
Plaintiffs further urge that, in any event, said election was illegally conducted, and therefore null; for the reason that but one polling place was provided for in said district, to wit, at Basile in Evangeline parish, and that the voters of Acadia parish were required to (and did) vote outside of the parish where they resided. As to which last, see Milton v. Lincoln Parish School Board, 152 La. 761, 94 South. 386.
Whereupon defendants challenge the authority and deny the jurisdiction of the court herein, as follows;
“And the respondents now plead as a bar to plaintiffs action' herein, and as a bar to the right and authority of this honorable court to inquire into said, matters, the prescription (limitation) of sixty days as provided for in paragraph (n) of section 14 of article 14 of the Constitution of 1921.”
*334 II.
Paragraph (n) of section 14 of article 14 pf the Constitution of 1921 (pages 105 and 106) reads as follows:
“For a period of sixty (60) days from the date of promulgation of the result of any election held under the provisions of this section, any person in interest shall have the right to contest the legality of such election, the bond issue provided for, or the tax authorized, for any cause; after which time no one shall have any 'cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever. If the validity' of any election, special tax or bond issue authorized or provided for, held under the provisions. of this section, is not raised within the sixty (60) days herein prescribed, the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the" same shall be conclusively presumed, and no court shall have authority to inquire into such matters. * * * ”
III.
The Constitution of 1898 provided (article 270) that—
“The General Assembly shall have pow.er to enact general laws authorizing the parochial, ward and municipal authorities of the state, by a vote of the majority of the property taxpayers * * * to levy special taxes in aid of public improvements ‘ or railway enterprises; provided,” etc.
This was carried into effect by Act 202 of 1898, p. 483, amended by Act 23 of 1904, p. 26.
In June, 1905, under authority of the police jury of Acadia parish, an election was held in the TMrd justice of the peace ward, to authorize a tax in said ward in aid of the Opelousas, Gulf & Northeastern Railroad Company, which election resulted favorably to said tax and was duly promulgated. The railroad was completed and operatéd in 1907. But when in 1908 an attempt was made by the railroad company to collect said taxes, this court held that—
“Under Article 270 of the Constitution of 1898, the Police Jury is without power to order an election for special taxes in aid of a railway enterprise in a Justice of the Peace Ward forming a part of a regular parish ward. The ‘ward’ mentioned in said article is the political subdivision of the parish commonly called a ‘police jury ward.’ ” Daigle v. Opelousas, Gulf & N. E. Ry. Co., 124 La. 1047, 50 South. 846.
Thus the railroad did not get its taxes; but the people of the “police jury ward” got the railroad, since it could' not move away.
The decision was doubtless correct; but the taxes were lost to the railroad simply because the Railway officials and attorneys, the parish officials and voters, did not understand that a “ward” did not mean a justice of the peace ward.
This opinion was handed down in December, 1909, and became final January, 1910; but at the very next session of the Legislature thereafter held, to wit, May to July, 1910, Act 256 of that year was passed on the same subject-matter, wherein was included section 17, reading as follows (page 432):
“That, for a period of sixty days from the date of the promulgation of the result of any such election, any person in interést shall have the right to contest the legality of suqh election for any cause; after which time no one shall have any cause of action to contest the regularity, formality, or legality of said election for any cause whatever. If the validity of any election held under the provisions of this act is not raised within the sixty days herein prescribed, then no governing authority of any subdivision herein named, required to levy a tax or issue bonds as authorized at an election or under this act, shall be permitted to refuse to perform that duty and urge as an excuse or reason therefor, that some provision of the Constitution or law of Louisiana has not been complied with, but it shall be conclusively presumed that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of sixty days as herein provided.” See Act 256 of 1910, § 17, p. 432.
In the same year an act relative to drainage was passed, containing a somewhat similar provision, to wit, Act 317 of 1910 (section 28).
*336 In February, 1912, this court said:
“The prescription, of 60 days, established by section 28 of Act No. 317 of 1910, has no application to proceedings which are not only unauthorized by, but in contravention of, the law, constitutional and statutory.” St. Charles Drainage District v. Cousin, 130 La. 331, 57 South. 992.
In 1917 this court held that under section 17 of Act 256 of 1910, an attack upon a bond issue and tax came too late if made more than 60 days after the promulgation of the returns of election, even though the bond issue and tax were attacked on the ground of “unconstitutionality,” and the court said:
“The limitation was devised * * * to protect the fisc against uncertainty, and to protect the bonds to be issued from attack, after a reasonable time given to the taxpayers to contest the validity thereof.” Morgan’s La. & Tex. R. R. & S. S. Co. v. Tax Collector, 142 La. 190, 76 South. 606.
In 1918 this court said in Tremont Lumber Co. v. Police Jury, 144 La. 678, 81 South. 249:
“Defendant’s plea of 60 days’ prescription [under section 17 of Act 256 of 1910] must also be overruled. If the authority which called the election had no right to do so, then the election was so absolutely null that it amounts to nothing, and cannot be given vitality by prescription”—citing Daigle v. Opelousas, Gulf & N. E. Ry. Co., supra.
IV.
It will thus be seen that in Daigle v. Opelousas, etc., R. Co., 124 La. 1047, 50 South. 846, a tax on the faith of which a railroad had been built was set aside long afterwards on a perfectly legal but very fine ex post facto distinction between a justice of the peace ward and a police jury ward; that is, between the territory for which a justice of the peace is elected and that for which a police juror is elected (generally, coextensive).
It will further be seen that act 256 of 1910 was passed immediately afterwards; that in St. Charles Drainage District v. Cousin, 130 La. 331, 57 South. 992, this court emasculated the statute of 1910, by denying, in effect, that the limitation fixed by said statute had any application where the legality of the tax was involved; that in Morgan’s La. & Tex. R. Co. v. Tax Collector, 142 La. 190, 76 South. 606, the court in effect overruled the St. Charles Case, and reinstated the statute of 1910 in full force by holding that the limitation fixed thereby applied even when the constitutionality of the tax was involved; and, finally, that in Tremont Lumber Co. v. Police Jury, 144 La. 678, 81 South. 249, this court went back to the doctrine of the Daigle Case decided before the act of 1910, and in view of which the act of 1910 appears to have been passed.
V.
It wag in this condition of uncertainty, and of vacillation on the part of the court, that the convention of 1921 met. It was as well known to the members of that convention as it is to the members of this court that no bond issue by any public body in this state could be negotiated unless and until this court had passed finally upon that particular bond issue; as fully appears from correspondfence in this transcript and in others that have come before us.
Accordingly, that body, which alone had power to give jurisdiction or withold it from the courts, adopted paragraph (n) of section 14, art. 14, aforesaid. And that paragraph, in terms too plain to be mistakable, clearly withholds jurisdiction from the courts of this state after 60 days. It says:
“And no court shall have authority to inquire into such matters.”
And the matters into which “no court shall have authority to inquire” are set forth in the next preceding words of the paragraph, to wit:

“The authority to.issue the bonds, the legality thereof and of the taxes necessary to pay the same.”

*338 All of which the paragraph declares shall be conclusively presumed and—
“After which [60 days] no' one shall hav,e any'cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever."
VI.
Accordingly the Constitution declares that when 60 days have elapsed after the promulgation of a tax election—
(1) The legality of the election, of" the authority to issue the bonds, and of the .taxes necessary to pay the same shall be conclusively presumed.
(2) That no person shall have any right of action to contest the legality of said election,, tax provision or bond authorization, for any cause whatsoever; and
(3) That no court shall have authority to inquire into such matters.
The Constitution: therefore declares in plain terms that after 60 days the bonds and taxes shall be conclusively held to be valid, that no one shall have the right to question their validity, that no court shall have authority to entertain any controversy over their validity.
And it seems to us that language could not be used to express more strongly the very patent intention of the constitutional convention, to wit, that after 60 days have elapsed without any attack upon a bondUssue and tax voted by property taxpayers under col- or of law, any person may safely purchase such bonds and feel secure that the taxes levied to pay them will be sustained by the courts of this state. The, constitutional convention had the right to say this; it did say it, and that is the end of the matter.
The judgment appealed from declining jurisdiction was therefore correct.
Judgment affirmed.
LAND and BRUNOT, JJ., dissent.