THOMPSON, J.
 

 This suit presents an attack upon the legality of the creation of
 
 *423
 
 a drainage district, and the validity of a ' bond issue and tax levy, authorized by the commissioners of said district pursuant to an election of the taxpayers qualified to vote at such election.
 

 The first question to be decided is whether the grounds of attack are of such nature and character as to be barred from judicial inquiry by the provisions and limitations, of the Constitution of 1921, and the statutes under which the district was created.
 

 The Lafourche-Terrebonne drainage district was created by the police juries of the two parishes under the provisions of the Constitutions of 1898 and 1913, and Act 317 of 1910, as amended by Act 219 of 1912, Act 227 of 1914, and Act 225 of 1916.
 

 The election at which the bond issue and tax levy was authorized Was held since the adoption of the Constitution of 1921, and particularly under the provisions of Act 46 of 1921 (Ex. Sess.), approved on November 16 of that year.
 

 ■ The result of the election was duly announced and promulgated, and on July 31, 1924, the board of commissioners of said district authorized the issuance of the bonds and the levy of the tax. Accordingly, the | bonds were advertised to be sold on November 18, 1924. Bids were submitted by the Whitney Central Trust & Savings Bank and Caldwell & Co. at par on a 5% per cent, interest basis, plus a premium of $1,750. These bids were accepted by the board, and its president and secretary were authorized and instructed to execute the bonds and deliver the same to the purchasers.
 

 . On April 14, 1925, at the request of the drainage commissioners, the police juries of Lafourche and Terrebonne adopted, respectively, an ordinance reorganizing the said drainage district under the provisions of act 238 of 1924.
 

 And thereafter, on- May 13, 1925, the board of commissioners ,of the reorganized district met and approved the indebtedness incurred by the Lafourche-Terrebonne drainage district in the sum of $175,000 and interest, and authorized the issuance of the said bonds therefor, and instructed the president and secretary of the board to sign, execute, and deliver the said bonds to the purchasers-. The bonds were duly issued, and were certified to by the secretary of state "in the manner required by law, and were about to be delivered to the purchasers when this suit was filed.
 

 The suit is against the police juries of Lafourche and Terrebonne parishes, the' board of commissioners of the drainage district, Caldwell & Company, and the Whitney Central Trust & Savings Bank.
 

 The prayer of the petition is that the ordinances of the two police juries, creating the drainage ’district and reorganizing the same, and the action of the drainage board in calling the election, and in issuing and selling the bonds, all be decreed null and V9id ab initio, and that all of the parties be perpetually enjoined from disposing of said bonds, and from levying any taxes in said district for the payment of said bonds.
 

 To the^ plaintiffs’ petition all the defendants pleaded the want of jurisdiction in the court to inquire into the subject-matter of the suit and the prescription of 30 and 60 days, all as provided by Act 317 of 1910, as amended by Act 227 of 1914, and section 43 of Act 46 of 1921 (Ex. Sess.), paragraph (n) of section 14 of article 14 of the Constitution of 1921, and section 2 of Act 238 of 1924.
 

 The pleas were referred to the merits, and all the defendants answered, alleging that all the proceedings had in connection with the drainage district’s creation, the holding, of th& election on the bond issue, the issuance and sale of the bonds, and the levy of the tax were legal, valid, and binding.
 

 After a trial on the merits, the exception
 
 *425
 
 of jurisdiction and the pleas of prescription were sustained and plaintiffs’ suit dismissed.
 

 It is to be observed that, notwithstanding the comprehensive and all-embracing prayer of the plaintiffs’ petition, the sole ground of attack on the creation of the district and the ^issuance of the bonds and levy of the tax is that certain lands of the drainage district lying within the parish of Terrebonne were embraced within an existing drainage district known as “Upper Terrebonne district,” and were subject to a tax which was then levied and was being collected and would be so levied and collected until and including the year 1928, and that there was at the time an outstanding bond issue of said then existing district.
 

 Not otherwise is there any complaint against the authority of the police juries to create the drainage district here involved.
 

 Nor is thére any complaint that the election authorizing the bond issue and tax levy and the promulgation of the returns of election were irregular or illegal.
 

 It is admitted in the petition that the election authorizing the bond issue and the tax levy was held and the promulgation of the result was made more than 60 days pri- or to the filing of this suit.
 

 It may be that under the various statutes authorizing the creation of drainage districts an already existing drainage district could not be affected or changed, its boundaries enlarged, or its territory merged into another drainage district, t when such existing district had by proper authority issued bonds and levied a tax on the lands within the then existing district to meet the payment of such bonds, but this is a question we are not called upon here to decide.
 

 It suffices to say that the Constitution of this state and the statutes passed pursuant thereto has not only not granted to a taxpayer, whether resident or nonresident, the unlimited and unrestz-ieted right to question the validity or the legality of an election authorr izing a bond issue and the levy of a tax for drainage works, but has expressly and in terms unmistakable withheld from such tax-1-payer the right judicially to raise such questions, unless he comes into court with such complaints within a period of 60 days after the promulgation of the returns of any such election. We think it will suffice to quote only from Act 225 of 1916, Act 46 of 1921 (Ex. Sess.), and the constitutional provision of 1921.
 

 Section 1 of Act 225 of 1916 provides that all bonds issued under the pi'ovisions of tbe act, ■ and registered and certified to by • the secretary of state, shall constitute a binding and irrevocable contract between the holder or holders of said bonds and the drainage district issuing the same, and that they will be protected by every constitutional guaranty of good faith, and every taxpayer in said drainage district, whether a resident or nonresident, and every other person interested is, after the lapse of 60 days, irrevocably estopped from setting up any defense to the levying and collecting of said tax or to the issuing of the bonds secured thereby, or to any of the proceedings leading up to and including the authozñzation to levy and collect said tax and issue said bonds; and no court shall have jurisdiction to entertain aziy suit to contest the validity or legality 'of said bonds, or of any proceedings leading up to and including the issuance of said bonds, or the levying and collecting of the tax provided for the payment of such bonds.
 

 Section 43 of Act 46 of 1921 (Ex. Sess.) provides that for a period of 60 days from the date of the promulgation of the result of any election held under the provisions of this act, any person in interest shall have the right to contest the legality thereof, the bond issue provided for, or the tax authorized for any cause; after which time no one shall have any cause or right of action
 
 *427
 
 to contest tlie legality, formality, or regularity of said election, tax provision, or bond authorization foi; any cause whatsoever. If the validity of any election, special tax, or bond issue, authorized or provided for under the provisions of this act, be not raised within the 60 days herein prescribed, the authority to issue the bonds, the regularity' thereof, and of the taxes necessary to pay the same, shall be conclusively presumed, and no court shall have authority to inquire into such matters. i
 

 The act from which the foregoing is taken was approved on November 16, 1921, and the language used is a reproduction of paragraph (n) of section 14 of article 14 of the Constitution, which went into effect on July 1, 1921.
 

 The language of the Constitution and of the acts of the Legislature is so clear, positive, and emphatic as to leave no doubt, it would seem, as to its meaning.
 

 If the validity, declares the organic law, of any election, special tax, or bond issue authorized or provided for, held under the provisions of this section, be not raised within the 60 days herein prescribed (from date of promulgation of the election), the authority to issue the bonds, the legality thereof and of the taxes necessary tó pay same, shall be conclusively presumed.
 

 And to make the meaning, if possible, more definite arid emphatic, and to, remove any possible doubt, to place the matter beyond controversy, and to close the door against any wavering or advérse interpretation or construction of the intent of the makers of the Constitution, it was further declared that no court shall have authority to inquire into such matters.
 

 . We had occasion to apply this constitutional provision in the case of Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280, and we there said:
 

 “And it
 
 seems to
 
 us
 
 that
 
 language could not be used, to express more strongly the very patent intention of the constitutional convention, to wit, that after 60 days have elapsed without any attack upon a bond issue and tax voted by property taxpayers under color of law, any person may safely purchase such bonds and feel secure that the taxes levied to pay them will be sustained by the-courts of this state. The constitutional convention had the right to say this; it did say it, and that is the end of the matter.”
 

 And in a case still more recent, Brock v. Police Jury, Parish of St. Landry, ante, p. 66, 105 So. 227, our number 27085, we said:
 

 “Plaintiff’s action cannot prevail for the further reason that it was instituted more than 22 months'" after the creatiop by the police jury of the subroad district, and more than 9 months after the. promulgation of the returns of the special election held for the purpose of determining whether the governing authority of said subroad district should be authorized to incur debt and to issue bonds to build and maintain highways within said subroad district”—citing the Constitution and the Roberts Case. -
 

 The creation of the drainage district, the holding of the election authorizing the issuance of the bonds and the levy of the tax, and the promulgation of the result of that election having been had more than 60 days before the filing of this suit, the authority to create the district, the regularity and legality of thé proceedings and of the bond issue and tax levy are all conclusively presumed, and the plaintiffs are without authority or standing in court to attack or contest the same.
 

 We have but to obey the constitutional provision which denies this court, or any court, jurisdiction or power to inquire into the legality and validity of sfiid bond issue and said tax in so far as these plaintiffs are concerned.
 

 There is need to say nothing further.
 

 The judgment appealed from is affirmed.
 

 O’NIELL, C. J., concurs in the decree.