The defendants' demurrer is sustained. The suit will be dismissed.

---

## ST. LOUIS & S. W. RY. CO. v. NATTIN, Tax Collector.

District Court, W. D. Louisiana, Shreveport Division. March 12, 1927.

No. 278.

1. **Highways** ⟜148—Railroad company's right to assert case for injunctive relief was not affected by denial of right to sue for another corporation.

Railroad company was entitled to assert its own case for injunction to restrain collection of tax by road district, even if railroad company was not entitled to sue as regards claim asserted in behalf of another corporation.

2. **Highways** ⟜148—Complaint of property owner, alleging highway district was improperly formed, that tax was levied for indebtedness not due, and that plaintiff was discriminated against and denied hearing held sufficient to permit urging of defense (Const. La. 1921, art. 14, § 14; Act La. No. 118 of 1921; Const. U. S. Amend. 14).

Complaint of property owner to enjoin collection of taxes in consolidated road district, alleging that only small portions of parish were omitted from district for purpose of evading Const. La. 1921, art. 14, § 14, that tax was levied for purpose of paying bond interest falling due in succeeding year, in violation of Act La. No. 118 of 1921, and that complainant received no benefits and was discriminated against and denied opportunity for hearing, in violation of Const. U. S. Amend. 14, *held* sufficient to permit defendant to urge its defense.

3. **Highways** ⟜136—Police jury's determination of boundaries of road district, where not including entire parish, did not invalidate tax proceedings (Act La. No. 118 of 1921; Const. La. 1921, art. 14, § 14).

Conduct of police jury in forming road district to include most of territory in parish, under Act La. No. 118 of 1921, where police jury apparently acted in good faith, and it was not shown that limits were extended so as to embrace complainant's property, did not invalidate tax proceedings in highway district, under Const. La. 1921, art. 14, § 14, which prohibits creation of road district comprising whole territory of parish, especially in view of constitutional amendment submitted in 1924; court not being permitted to substitute its judgment as to boundaries for that of police jury.

4. **Highways** ⟜137—Any irregularity in creating road district was cured by 60 days' prescription (Const. La. 1921, art. 14, § 14; Act La. No. 46 of 1921, §§ 33, 34, 35, 42, 43; Act La. No. 118 of 1921, § 11).

Any irregularity or illegality in creation of consolidated road district by police jury, under Act La. No. 118 of 1921, was cured by prescription of 60 days provided by Const. La. 1921, art. 14, § 14, Act La. No. 46 of 1921, §§ 33, 34, 35, 42, 43, and Act La. No. 118 of 1921, § 11, in suit to enjoin collection of taxes, as regards claimed evasion of constitutional provision which prohibited creation of road district comprising entire territory of parish.

5. **Evidence** ⟜23(1)—Court knows tax assessments in Louisiana are made in spring and summer, and no collection is made until fall.

Court takes cognizance of fact that assessments of property in state of Louisiana are made in the spring and summer of the year in which taxes are collected, and that no collection of taxes is made until tax rolls are filed in fall.

6. **Highways** ⟜149—Road district's levy on 1926 assessment to pay semiannual installment on road district's bonds, falling due in March following, held valid (Const. La. 1921, art. 14, § 14, and Act La. No. 118 of 1921).

Where interest on bonds of road district created under Const. La. 1921, art. 14, § 14, and Act La. No. 118 of 1921, was payable semiannually on 1st days of March and September of each year, district's levy of tax on 1926 assessment to pay installments of principal and interest of bonds, falling due on March 1, 1927, was not in violation of statute mentioned, which limits amounts to be collected to sums sufficient to discharge obligations maturing for current year, since no collection of taxes is made until fall, and tax merely covers year's interest.

7. **Highways** ⟜121—Legislature may empower municipal subdivision to impose taxes for highways, and status of subdivision is not affected by fact that it must secure approval of taxpayers.

Legislature may vest power to impose highway taxes in municipal subdivision, and fact that such subdivision must have approval of property taxpayers does not affect its governmental status.

8. **Constitutional law** ⟜233, 290(3)—Highways ⟜122—Statute limiting property owners' right to hearing on tax imposed by road district to 60 days after promulgating result of election held not to deny due process or equal protection (Const. La. 1921, art. 14, § 14; Act La. No. 46 of 1921, §§ 33, 34, 35, 42, 43; Act La. No. 118 of 1921, § 11; Const. U. S. Amend. 14).

Const. La. 1921, art. 14, § 14, Act La. No. 46 of 1921, §§ 33, 34, 35, 42, 43, Act La. No. 118

of 1921, § 11, and Act La. No. 97 of 1924, providing for creation of road districts and allowing period of 60 days to attack bond issue and tax after promulgation of result of election, *held* to afford ample opportunity to property owners to be heard, without violation of Const. U. S. Amend. 14, guaranteeing due process and equal protection, and property owner could not thereafter contest bond issue as not affording benefits.

**9. Taxation ⬳493(3)—Taxpayer may not complain, after lapse of limitation period, that tax assessment was discriminatory (Act La. No. 97 of 1924).**

Act La. No. 97 of 1924, limiting contests on tax assessments to 30-day period after filing final assessment roll, is reasonable and valid, and taxpayer may not thereafter complain that assessment was discriminatory.

**10. Commerce ⬳73—Imposition on railroad of taxes for payment of installment of bond issue of consolidated road district held not to interfere with interstate commerce (Const. La. 1921, art. 14, § 14; Act La. No. 118 of 1921; Const. U. S. art. 1, § 8).**

Tax imposed on railroad for payment of principal and interest on bond issue of consolidated road district organized under Const. La. 1921, art. 14, § 14, and Act La. No. 118 of 1921, *held* not to constitute interference with or unjust burden on interstate commerce, in violation of Const. U. S. art. 1, § 8.

In Equity. Suit by the St. Louis & Southwestern Railway Company against J. H. Nattin, Tax Collector, Consolidated Road District of the Parish of Bossier, La. Decree for defendant.

Decree affirmed 48 S. Ct. 438, 72 L. Ed. —.

J. R. Turney, of St. Louis, Mo., for complainant.

Wilkinson, Lewis & Wilkinson, of Shreveport, La., and Milling, Godchaux, Saal & Milling, of New Orleans, La., for respondent.

Before FOSTER, Circuit Judge, Presiding, and DAWKINS and BURNS, District Judges, sitting pursuant to the statute.

DAWKINS, District Judge. Complainant, a Missouri corporation, brought this suit to enjoin the collection by the sheriff and ex officio tax collector of Bossier parish, La., of a tax levied by the police jury of said parish, for the payment of principal and interest on certain bonds issued by a consolidated road district therein. The grounds for injunction are that the territory within said district "includes practically all of the territory within the parish of Bossier, * * *" and, while small portions of the parish were omitted, this was done as a "pretense and sham * * * for the

purpose of evading article 14, § 14, of the Constitution of Louisiana, which prohibits the creation of a road district which shall comprise the whole territory of the parish"; that the said ordinance levying the tax imposes 7 mills on the property of complainant for the year 1926, which is 2 mills more than is necessary for the payment of the principal and interest of said bonds falling due in that year, and complainant is informed and avers that said 2 mills is for the purpose of paying the amounts becoming due in 1927, all in violation of Act No. 118 of 1921 and the Constitution of the state, which limits the amount to be collected to a sum sufficient to discharge the obligations maturing in the year in which the tax is levied; that the market value of its property will not be increased, and that it will derive no benefits from said tax, or the construction of said roads, but, on the contrary, will actually be injured, because one of the principal roads to be constructed will parallel its railroad from the Arkansas state line to Bossier City, and it will have the competition of bus and truck lines thereon, which will take from complainant much of its passenger and freight traffic between said points, thus taking its property without due process and denying it equal protection under the law, contrary to the Fourteenth Amendment to the federal Constitution; that it will be discriminated against for the reason that its property is assessed "at its practical cash value, whereas the farm lands and other property in said district are assessed at a much lower rate, also in violation of section 1, art. 14, of the Constitution of the United States; that the portion of its line within the parish of Bossier forms a part of an interstate railroad, and said assessment levies an unjust burden upon interstate commerce, in violation of section 8, art. 1, of said Constitution; and that the act of the Legislature (No. 118 of 1921) authorizing the creation of said road district makes no provision for a hearing at any time or place by any taxpayer as to the validity or amount of taxes to be assessed against property located within said road district, or of the benefits to accrue thereunder, likewise in violation of the Fourteenth Amendment to the federal Constitution.

Complainant also sues on behalf of the Shreveport Bridge & Terminal Company, a Louisiana corporation, which is assessed with the tax, upon the allegation that it owns all of the capital stock of said bridge company, "and to all intents and purposes

is the owner of said Shreveport Bridge & Terminal Company," and has a contract with said bridge company "under which and by which it contracts and agrees to pay all deficits which may occur in the operation of said * * * company, a copy of which contract is attached hereto and made a part hereof."

A rule nisi was issued and the matter heard before this court at New Orleans, La., on the ——— day of January, 1927. At the hearing respondent appeared and filed, first, a motion to dismiss; and, secondly, an answer to the rule. In the motion to dismiss it was averred that the petition on its face disclosed that no demand had been made upon the Shreveport Bridge & Terminal Company to institute the complaint, as required by Equity rule No. 27, and, in the alternative, if it should be held that complainant has an interest in the property of said company sufficient to institute this proceeding, said bridge company is a necessary party, and this court should order that it be joined herein; second, that the allegations of said complaint are too vague and indefinite to require respondent to answer; and, third, that the complaint does not disclose a ground for equitable relief.

Subject to the motion to dismiss, respondent answered, alleging that the complainant has no right of action under the laws of the state:

(a) For the reason that, if such right had ever existed, which was denied, same had prescribed and perempted.

(b) That the said tax was levied and imposed for the sole and only purpose of paying the principal and interest of a bond issue of $1,600,000 by the police jury of said parish as the governing authority of said road district, pursuant to the Constitution and laws of the state of Louisiana, after due notice and publication thereof for a period of 30 days, and approval by a majority vote of the qualified taxpayers of said district, the result of which was duly promulgated; that more than 60 days elapsed from the promulgation of the result of said election, without any attack being made thereon, and the said bonds had been on March 9, 1926, acquired by the Commercial Securities Company, Caldwell & Co., and the Whitney Central Trust & Savings Bank; that the said bonds contained the recital that all the provisions of law had been complied with, as required by section 33 of Act 46 of the year 1921, and on August 10, 1926, the police jury, as the governing authority for said district, had levied said tax of 7 mills upon all

the property in said district, a copy of the ordinance levying the same having been published in the official journal of said parish on August 19 to September 23, 1926, inclusive, all of which was done prior to the institution of this suit by complainant.

(c) That in paragraph (n) of section 14, art. 14, of the said Constitution of 1921, and sections 33, 34, 35, 42, and 43 of Act 46 and section 11 of Act 118 of the Legislature of Louisiana for the year 1921, the right of persons to resort to the courts "for the purpose of questioning the validity of the election, the bonds, or the taxes levied, imposed, and assessed for the purpose of paying said bonds, in principal and interest, was limited to 60 days from the date of the promulgation of the result of the election," which respondent pleaded in bar of complainant's right to institute this suit.

(d) That section 43 of Act 46 of 1921 provides: "If any resolution be adopted or proceeding had more than thirty (30) days after the promulgation of the result of the election, no contest, action or proceeding to question the validity or legality of such resolution or proceeding so adopted shall be begun in any court by any person for any cause whatsoever, after the expiration of thirty (30) days from the date when the resolution was adopted, or proceeding had." That more than 30 days had expired from the promulgation of the result of said election before this suit was brought, and respondent also pleaded the same in bar of this action.

(e) That the assessment upon the tax rolls and the valuation of complainant's property was fixed by the Louisiana tax commission, after due notice and hearing, as well as that of other taxpayers; that said assessment rolls were filed with the clerk of the court of Bossier parish on October 6, 1926, and that under Act No. 97 of the Legislature of 1924 the complainant and all other persons making return of property for taxation had 30 days thereafter within which to contest the correctness or legality of said assessment, but that complainant did not avail itself of said right, and the same had prescribed, which prescription of 30 days respondent also specially pleaded.

Respondent then answered the bill seriatim, admitting the jurisdictional averments, but otherwise denying the illegality or irregularity of the proceedings by which the property was assessed and the tax levied or that the said road district had been created in bad faith.

[1, 2] As to the motion to dismiss, even if

we should find that the railroad company had no right to sue in behalf of the bridge company, it would still have a standing to assert its own case. The bill, in our opinion, is sufficiently definite to permit defendant to urge its defense, and the plea of want of equitable relief will be disposed of along with the merits. The issues involved may therefore be disposed of by answering the following questions:

(1) Did the inclusion of all of the parish, except a small portion lying on the north and east sides, amounting to some 25,000 acres, have the effect of invalidating the tax proceedings?

(2) Did the levying of a tax upon the assessment of 1926 to pay installments of principal and interest of the bonds falling due March 1, 1927, violate the Constitution and statutes of the state?

(3) Will the complainant be injured or benefited in its property rights, and has it shown any standing to complain on that score, under the constitutional guaranty of equal protection under the laws of the state?

(4) Has complainant been discriminated against in the matter of assessment, and, if so, can it be heard to complain at this time?

(5) Does the tax impose an undue burden on interstate commerce, contrary to the federal Constitution?

(6) Will the fact that the tax to be paid by complainant will be devoted to building a highway, over which vehicles competing with it for business will be allowed to operate, have the effect of depriving complainant of its property without due process of law, under the Fourteenth Amendment to the Constitution of the United States?

(7) Does the Act 118 of 1921, carrying into effect the provisions of the Constitution of the state of 1921, afford it an opportunity to be heard on the question of benefits to its property, and, if not, is the nature of the tax such as to entitle it to such hearing?

[3, 4] 1: With respect to the first question as to whether the omission of a small portion of the parish from the road district has had the effect of invalidating the tax, as an "obvious" attempt to evade the Constitution and statute, the Legislature, at its session in 1924, submitted an amendment to the Constitution of 1921, which was duly adopted by a vote of the people, omitting the former provisions prohibiting the inclusion of the whole of a parish within a road district, the amendment in question reading as follows:

"The Legislature may by general law authorize the police juries to create road dis-
27 F.(2d)—49

tricts and sub-road districts, composed of territory either wholly within a parish, or partly within two or more parishes." Act No. 177 of 1924.

It is true that this was not an act of the Legislature which could be construed as a repeal of the provisions of Act No. 118 of 1921, but it is significant that the method of adopting the amendment was by a proposal of the Legislature, in which two-thirds of its members had to concur, and the point, under the circumstances, cannot be said to involve any question of state policy. In any event, it is sufficient to say that, even as the law formerly stood, it was left to the discretion of the police jury as to just how much of the parish less than the whole should be included in the road district, just so long as the whole was not embraced. The line of complainant's road, as shown by the map attached to its bill, runs from the north end of the parish in a southerly direction, through the western portion thereof, to the city of Shreveport, and the territory omitted is some miles away, on the eastern and northern edges of the parish, in such manner that it is clear that there is no indication that the police jury "extended" the limits, so as to embrace complainant's property. There is no substantial evidence to show any bad faith on the part of the police jury, and, since the matter had to be determined by that body, the court cannot substitute its own judgment therefor, so long as there has been no violation of the Constitution and statutes. Besides, this matter involved purely a local law, as to which we think, if there was any irregularity or illegality, same was cured by the prescription or peremption of 60 days provided by paragraph (n) of section 14, art. 14, of the state Constitution. Hardin v. Police Jury of Vernon Parish, 155 La. 899, 99 So. 690; Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280.

[5, 6] 2. It is shown that the bonds were all dated March 1, 1926, and that the interest thereon was payable semiannually on the 1st days of March and September of each year. Therefore the first payment of interest had to be made on September 1, 1926, and the second on March 1, 1927. The court will take cognizance of the fact that assessments of property in the state of Louisiana are made in the spring and summer of the year in which taxes are collected, and that no collection of taxes is made until the rolls are filed in the fall. Hence it was not possible to levy and collect the taxes to pay at maturity the installment of interest falling due on March 1, 1927, upon the tax roll of that year.

What the police jury did was to levy sufficient taxes upon the assessment of 1926 to pay the interest maturing September 1, 1926, and March 1, 1927. We do not believe that the language of the Constitution and of the statute, which are practically the same, providing that the "subdivisions shall impose and collect annually, in excess of all other taxes, a tax to pay the interest accruing annually or semiannually, and the principal falling due each year," is susceptible of the construction that the money collected upon the rolls of a particular year must be devoted solely to the payment of amounts maturing within that calendar year.

Both the framers of the Constitution and the members of the Legislature, it must be assumed, were aware of the facts above related with respect to the assessment and collection of taxes, and that' circumstances might be such that the principal and interest, since the latter was expressly permitted to be made payable semiannually, would mature just in the manner and at the time as were adopted in this instance, and that it would not be possible to timely collect on the assessment of any year the money to pay installments falling due from, say the 1st of January to the filing of the tax rolls. It is not contended, and as a matter of fact there has not been imposed a greater tax upon the assessment of the year 1926 than was sufficient to pay the. principal and interest upon the bonds maturing within the period of one year. In other words, the burden of the taxpayer for the year 1926 is no greater than if the interest had been payable annually, and the levy of 1926 had been made to pay the interest maturing at the end of the year. There had to be a beginning and hereafter, and until the bond issue is discharged the taxpayer will no doubt pay the principal and interest as they become due.

3. Questions 3, 6, and 7 will be considered together. They involve the issue as to whether or not the taxes are of such a nature that the complainant may raise the question of benefits, and, if so, was it afforded an opportunity to be heard thereon under the equal protection and due process clauses of the federal Constitution. These identical questions have been so fully covered by the recent decision of the Circuit Court of Appeals for this circuit in the case of Wight v. Police Jury, 264 F. 707, that we quote at length from its disposition of the matter, beginning on page 708, and which we think is a complete answer to complainant's contention, to wit:

"Article 292 of the Constitution of Louisiana [which corresponds with section 14, art. 14, of the Constitution of 1921], as published after the convention of 1913, provides for the division of parishes into road districts, and defines the taxing and bond-issuing capacity of the districts. Such legislation as is necessary to make the constitutional provisions effective is provided by Act No. 183 of 1914 and preceding statutes. The Constitution provides that 'police juries of this state may form their respective parishes into road districts.' No provision is made by the Constitution or a statute for notice to taxpayers of contemplated action by the police ,jury in the formation of districts, and in none of the cases under consideration was notice given. Provisions are made for notice of bond and tax elections, and for publication of the result, and the terms of the law have, in these respects, in each instance been observed.

"It is contended that the law as written and administered is unconstitutional, because the law does not require notice, and no opportunity is in fact given the taxpayers to be heard on the questions of the necessity or advisability of the creation of a road district, nor as to boundaries, nor as to whether property to be included would be benefited, nor as to the rate and duration of the tax, or the amount of the bonds.

"Communication, transportation, and commerce are distinguishing elements of civilization. To their development highways are essential. The construction and maintenance of good roads has been accepted universally as a function of government. In the United States there was an early recognition of the right of the general government to construct, or aid in the construction of, national highways; but the duty of providing roads was primarily in the states, and in the states the duty remains.

"After the success of the steam railroads was demonstrated, the attention of the federal and state governments was, for a number of years, especially directed towards their development. Aid was extended by the United States, by the states, by counties, parishes and municipalities. Though these highways have, ordinarily, been privately owned, the right of the states to levy taxes and appropriate property to help in their construction, and to authorize like action by their governmental subdivisions, has almost uniformly been sustained.

"The extraordinary development of the country has brought about conditions under which the needs for transportation facilities can no longer be met by the railroads, and by

the inferior dirt roads along which the pioneers have made their weary and wasteful way. Communities which have heretofore recognized the necessity of freeing themselves from the burdens of ignorance, and have provided public schools, have come to realize that getting out of the mud is another essential step to that end. They realize that good roads are the complement of the school house; that isolation is not only an ally of ignorance, but of poverty; that prosperity in farming, trading, or manufacturing waits on transportation and communication.

"A tardy recognition of these fundamental facts has brought about activity in the issue of bonds and the levy of taxes for road purposes. The national government is taxing all the people that great interstate highways may be constructed. States are taxing all their people that roads within the state may be built. In many states subdivisions have been made, or recognized, and authority given to the taxpayers therein to supplement the efforts of the state and national governments. These subdivisions for roads do not, ordinarily, take the form of improvement districts, in which specific property receiving peculiar benefits is assessed in proportion to the benefits, but are based upon the idea that the taxpayers are doing a proper part in the building up of systems of roads connecting all the sections of the country, and from which they, and everybody else, must derive a benefit.

"In the state of Louisiana, the parish is primarily used as the unit for road purposes; but, lest this division of the state should not bring the necessary local co-operation and supervision, provisions have been made for dividing the parishes into road districts, which, under the terms of the Constitution, became governmental subdivisions of the state. The legislation as to these governmental units recognizes that the needs of the public with reference to roads may be more imperative in some parts of the state than in others. It recognizes, also, that in some parishes or parts of parishes the people may be willing to tax themselves for good roads, while in others the conditions may be such that the taxes cannot be levied.

"The creation of road districts is vested by the Constitution in the police juries of the several parishes. It is a legislative authority doubtless well assigned. It may be assumed that the necessary action can better be performed by a body more familiar with local conditions and needs than by the state Legislature. No taxpayer, and no other person, would ordinarily have a right to interfere with or participate in the exercise of this power. It is conceivable that, even in defining the necessary governmental subdivisions, the people, acting in their primary power in the formation of their Constitution, or acting through their Legislature, or acting through a special legislative body, as in the present case, might lay off the lines in such an arbitrary, unjust way, with such a palpable purpose to destroy or confiscate property, that the protection of the Constitution would be denied. But such a possible case is not immediately under consideration.

"Complainant makes the proposition that the grant of power to the police jury violates the Constitution of the United States, because no provision is made by which he, as a taxpayer, may be heard with reference to the advisability of action under the authority, or in the manner in which the authority is to be exercised. There is no constitutional requirement of special notice to any particular individual of contemplated action of a general nature by a governmental body exercising general legislative or administrative functions. The taxpayer in a proposed road district has no more right to notice of a division of the state by the proper authority into road districts than to notice of the creation of a new parish or of the division of the parish into justice wards.

"The governmental functions are carried on in a public way. The forces which exist to compel conformity of public action to public opinion are open to everybody. Except in those cases in which action is contemplated directly affecting the right of an individual, as distinguished from action affecting the public generally, no person has more right to specific notice than all other persons. It is assumed that all people interested in public affairs will acquire a knowledge of what is taking place among those to whom the conduct of public affairs has been trusted. And so long as the officers are acting within their authority, redress for improper conduct is political, instead of judicial.

"There are certain classes of improvement districts, not supported by direct taxation, and with reference to which definite rules for determining benefits and assessments have not been prescribed by the law, where the rule may be different. Drainage, irrigation, sewerage, and street-paving districts may be of this character. In districts

of this kind, the improvement may be general and the expenses met by general taxes, or the improvements may bring general public benefits and also direct benefits to particular property, and the expense be met by general taxes and specific assessments, or the direct benefits to particular property may be so great, as compared to the general benefits, that equity is approximated by direct assessments in proportion to these direct benefits.

"In those cases in which improvement districts are formed for the direct benefit of the property within the district, and the method of meeting the expenses of the improvement is to determine the specific benefits, and to fix upon each property owner an assessment in proportion, and where the law designates no method of determining the benefit and assessment other than by a reference to some commission or other tribunal, a matter of fact is presented directly involving the property rights of individuals, and each person affected must have an opportunity to produce for consideration the facts pertinent to his individual case. If this opportunity is not given, even the fact that the assessment was fair may not meet the objection that the property owner is deprived of a constitutional right.

"Doubtless the laws could provide for road districts, in which improvements would be made for the benefit of specific property and the improvement met by assessments against such property. The Constitution and statutes of Louisiana, however, make no provision for such improvement districts. The districts under consideration are not of this character. They are special taxing districts for the general good. They enable the construction of good roads from which every person in the state may be expected to receive some direct or indirect benefit. To undertake to apply to such governmental activities the rules which are invoked with regard to drainage, irrigation, or other improvement districts of that character would be to entirely destroy the possibility of efficient governmental action."

[7] It is urged by complainant that the recent decision of the Supreme Court of the United States in the Archer county case (Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330), is contrary to this ruling of the Circuit Court of Appeals. However, the two cases are easily distinguishable. In the Archer County Case the power to initiate proceedings for the levying of the road tax therein involved was vested in a few taxpayers, who, in their petition, were given the right to define the district, fix the amount, maturity of the tax, etc., and when submitted to the county Commissioners the latter had no option but to order an election. If carried by vote of the property tax payers entitled to vote, then the bonds were issued and the tax levied accordingly. The court simply held that this was in effect the abdication of its authority by the Legislature and the vesting of unlimited power in the petitioning taxpayers, without opportunity to nonconsenting and nonvoting taxpayers to be heard. The proceeding was in no wise similar to the one here.

It is settled, in fact conceded, that the Legislature itself might impose the tax without hearing on the part of any one, and we think it equally true that it may vest that power in one of its municipal subdivisions, like the police jury or governing body of a parish. Under the Constitution and laws of Louisiana the police jury is made the governing authority for road districts, and the duties of defining the district, fixing the amount and duration, etc., of the bond issue, as well as the levying of a tax to pay the same, is intrusted to it. The fact that it must have the approval of the property tax payers does not, in our opinion, affect its governmental status as a subdivision of the state. In the present case we think the police jury complied with all of the requirements of the Constitution and the laws of the state, and in view of the nature of the proceeding it is not subject to the objection urged in the Archer County Case.

[8] The Constitution and statutes of the state, for a period of 60 days after the promulgation of the result of the election, afforded the complainant the right to attack the bond issue and tax for the payment thereof "for any cause," but thereafter "the authority to issue the bonds, the legality thereof and the taxes necessary to pay the same shall be conclusively presumed and no court shall have authority to inquire into such matters." It has been held by the Supreme Court of this state that this provision affords ample opportunity to be heard in the courts, and, if not exercised, the right is forever lost. Hardin v. Police Jury and Roberts v. Evangeline School Board, supra; Brock v. Police Jury, 159 La. 66, 105 So. 227; Fontenot v. Miller Gravity Drainage Co. District, 159 La. 302, 105 So. 351; Chiara v. La Fourche-Terre Bonne Drainage District, 159 La. 422, 105 So. 418; Henderson Land & Planting Co. v. Police Jury, 159 La. 733, 106 So. 285.

A similar view of the matter has been pronounced by the Supreme Court of the United States in Davidson v. New Orleans, 96 U. S. 97, 104, 24 L. Ed. 616, from which we quote, beginning at page 619, as follows:

"Whenever by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

[9] 4. The assessment laws of the state afford taxpayers full opportunity to be heard upon the valuation and amount of their assessments. In fact, public service corporations, like the complainant, are assessed, after full hearing, if desired, by a state board known as the Louisiana tax commission, which presumably is not influenced by local conditions. For 30 days after the filing of the final assessment rolls the taxpayer is permitted to go into the courts for the purpose of contesting his assessment, and, if not done within that time, then he is expressly precluded from doing so thereafter. Act 97 of 1924. We think this provision reasonable, for the state is entitled to fix some time after which the right to collect taxes for its own alimony and that of its subdivisions will be set at rest, and unless the provision is unreasonable we see no reason why any one should have a right to complain if they fail to avail themselves of that privilege. See authorities cited above.

[10] 5. We are of the opinion that the contention that the taxes in question imposed an undue burden on interstate commerce is without merit. The same argument could with equal force be applied to any tax levied upon the physical property of a common carrier located within the state, or within one of its taxing districts. Besides, both as to this question and the one immediately preceding, complainant has alleged its willingness to pay the ordinary state and parish taxes upon the basis of this same assessment, and gives us its reason for not doing so the refusal of the tax collector to accept the same.

For the reasons assigned, we think the preliminary injunction should be denied. A decree in accordance with these views may be presented.[1]

---

[1] Final order, directing a decree dismissing the bill, was granted March 15, 1927, on the above opinion.