DAWKINS, J.
Plaintiff attacks the proceedings of the police jury of Vernon parish creating a road district, the issuance of bonds, and levying of a tax pursuant thereto. From a judgment sustaining exceptions of no cause of action, and no right of action, this appeal is prosecuted.
The grounds of complaint, as stated in the brief of appellant, are as follows:
“First. That the ordinance pretending to create consolidated district No. 1 did not specify the existing road districts to be included *902 therein, the bonded and floating indebtedness of each district, the advisability of consolidating the roads in each district into a consolidated road system, nor make an estimate of the amount of money required.
“Second. That the ordinance purporting to create said consolidated road district No. 1 was not published ten days prior to calling an election therein.
“Third. That the police jury, subsequent to the election that was held, did not adopt an ordinance declaring that the consolidated road district had been created.”
And in a brief filed by amicus curiae since the oral argument, the issues are propounded as follows:
“The question before the court is simple. Does the 60-day prescription cure every illegality, every defect in connection with a political subdivision, or does it cure only the defects specifically provided for in the law?
“In this case, the petition attacks the very existence of the road district. It alleges that the district was never created either as a consolidated road district or as an ordinary road 'district; it alleges specifically that in creating the district the police jury did not:
“(1) Give notice of intention to create.
“(2) Publish the ordinance creating the district for 10 days.
“(3) Wait 10 days after publication before calling the election.
“(4) Pass an ordinance specifying the existing road districts, their debts, etc.
“In short the petition alleges that there was an omission of every requirement contained in Act 118 of 1921.”
The Ordinance No. 63, by which it is alleged the police jury “pretends” to create “consolidated road district No. 1, Vernon parish, Louisiana,” is “annexed to and made part” of the petition, and since it is comparatively short, we quote it in full:
“An Ordinance — No. 63.
“Organizing and creating consolidated road district No. 1 of Vernon parish, Louisiana.
“Section 1. Be it ordained by the police jury of the parish of Vernon, Louisiana, in regular session convened, that the territorial limits of consolidated road district No. 1 of Vernon parish, Louisiana, shall embrace and consist of the following territory, to wit:
“All of ward 1 of Vernon parish, Louisiana, including the town of Leesville, Vernon parish, Louisiana.
“All of ward 4 of Vernon parish, Louisiana.
“Section 2. Be it further ordained, etc., that as thus constituted the said consolidated road district No. 1 of Vernon parish, Louisiana, shall have all the rights and powers granted same under the Constitution and law.s of the state of Louisiana. '
“The above ordinance was read and adopted by sections and then re-read and adopted as a whole, all by yea and nay vote.
“On roll call, the members, voted as follows:
“Yea: Pitre, Jones, Martin, Jeane, Eerree, Carver and Roberts.
“Nay: None.
“Absent: MeElveen.
“Approved July 2, 1923.
“Adopted July 2, 1923. G. R. Carver,
“President of the Police Jury of Vernon Parish, Louisiana.
“Attest: E. E. Jordan, Clerk.
“State of Louisiana, Parish of Vernon.
“I hereby certify that the above and foregoing is a true copy of the original Ordinance No. 63, organizing and creating consolidated road district No. 1 of Vernon parish, Louisiana, and the same has been published in the official journal of Vernon parish, the Leesville Leader, for thirty (30) clear days, and that this ordinance was passed on the 2d day of July, 1923, at a regular meeting of the police jury of Vernon parish, Louisiana.
“Witness my hand at Leesville, Louisiana, this 25th day of August, A. D. 1923.
“E. E. Jordan,
“Clerk of Police Jury, Vernon Parish, Louisiana, and Consolidated Road District No. 1.”
There was also attached and made part of the petition certified copy of Ordinance No. 64 calling the election for submission to the property taxpayers “throughout consolidated road district No. 1 of Vernon parish” a proposition for authority to issue $400,000 of bonds, fixing the terms, interest rate, etc., and to lewy a tax to meet the principal and interest as they become due; which proposition also outlined the number, route, etc., of the three roads, respectively, -which defendant proposed to build.
And in said last-mentioned ordinance (64) it was further recited that:
*904 “Whereas it is the voluntary will of this body to call the election hereinafter provided for, and
- “Whereas, section 4 of article 14 of the Constitution of the state of Louisiana for the year 1921, and Act No. 46 of the- Extra Session of the .Legislature of the state of Louisiana for the year 1921, declares the police jury of the parish of Vernon, Louisiana, to be the governing authority through which said consolidated road district No. 1 of the parish of Vornon, Louisiana, may incur debt and issue negotiable bonds for such purposes, when authorized at an election to be held in said district, and,
“Whereas, the assessed valuation of the property situated in the said consolidated road district No. 1, exceeds the sum of $7,500,000, and that there is no bonded indebtedness existing in said road district, other than as follows,:
“The town of Leesville, one hundred thirteen thousand ($113,000) dollars.
“Now, therefore, be it ordained,” etc.
The ordinance then proceeds to provide in detail the form of ballot, election precincts, names of commissioners, etc., and directs the president of the jury to advertise notice of said election for thirty days and to comply otherwise with all of the formalities required hy Act 46 of 1921. It also fixes the time, hour and place at which, after the election, the jury will meet and determine the result. This ordinance was adopted in the same manner, by the same members, on the identical day, July 2, 1923, as Ordinance No. 63.
The petition also alleges:
“That in-accordance with said ordinance (No. 64) the president of the police jury of the parish of Vernon issued a notice of election, as provided for in such cases, copy of which is hereto annexed and made part hereof for the purpose of showing its nature, character and the date of its issuance.”
The copy of notice attached recites that pursuant to said Ordinance No. 64, notice of the special election “in consolidated road district No. 1” is given, and that it will he held on August 14, 1923, “as set forth in the following abstract of said ordinance. *• * * » Then appears a verbatim copy of the ordinance.
The petition further recites that in accordance with the said ordinance the election was held resulting favorably to said proposition by a majority in number of 274 votes, and in amount of $483,925; that on August 16, 1923, after canvassing the returns “with the above result, [the police jury] promulgated the same and caused a procSs verbal and promulgation thereof to he published iu the official journal of the parish of Vernon on August 23, 1923.”
After thus setting forth at length the entire proceedings, the petition assails their validity on substantially the grounds heretofore quoted from plaintiff’s brief, viz:
(a) That defendant did not specify the existing districts to be included in the consolidated district, with their bonded and floating indebtedness.
(b) That the ordinance creating the dis- ‘ trict was not published for ten days in the ’ official journal.
(c) That said' -consolidated district could have no existence until ten days publication of the intention to create the same, and the jury was powerless to order an election until the expiration of that delay.
(d) That after promulgating the result, the police jury did not adopt an ordinance “finding and declaring that said consolidated road district No. 1 had been created.”
In tbe alternative, it was further alleged that, if it should be held that “the subdivision -known as consolidated road district No.
1 is not in reality a ‘consolidated road district’ as contemplated by law, but is simply a ‘road district,’ the formation of which the law authorizes,” then it was not legally formed, and the proceedings were null because:
(a) No notice of intention to create such a district was ordered hy resolution, stating the territory of which said district was to be *906 composed, and providing that the police jury would on a certain date, hour and place proceed to create the proposed road district.
(b) That no notice of such purpose was published for four weeks, during thirty days, prior to a hearing.
(d) That no notice of the formation of said district after a hearing, formal or informal, was given.
(c) That no notice of election giving boundaries of said district was given or published or its creation submitted to the taxpayers within the territorial limits of wards 1 and 4 of Vernon parish.
It is thus made to appear, both by the allegations of the petition and. by the exhibits annexed to and made part thereof, that the police jury, the body designated by the Constitution (paragraph (c), § 14, of article 14) and by statute (section 2, Act 46 of 1921) as the authority empowerd to create road districts, did attempt to create the one now assailed, plainly declaring that it should consist of wards 1 and 4 of Vernon parish; including the town of Leesville. The petition and exhibits further disclose that the proposition to incur debt and issue bonds was advertised and submitted to the qualified voters within that territory, that they did by a large majority favor and approve the undertaking, and that the police jury did promulgate th'e result, accordingly, more than 60 days prior to the filing of this suit.
The whole burden of complaint is that there was a failure to comply with some of the detailed provisions of the statute — first, with respect to the formation of a consolidated road district (which, of course,' means where two or more existing districts are consolidated into a new one) ; and, secondly, in the alternative, that there was a failure to observe other , requirements, if the purpose was to create an ordinary, as distinguished from a consolidated, district.
Paragraph (c) of section 14 of article 14 of the Constitution declares:
“The Legislature fnay by general law authorize the police juries'to create road districts and subroad districts; * * * and may, by general law and within the limitations and conditions herein contained, authorize road districts and subroad districts, so created, through the police jury or juries of the parish or parishes, as the governing authorities thereof, to incur debt and issue negotiable bonds. * * * ”
Pursuant to this provision, the Legislature, at the special session of 1921, convoked by. the Constitution itself, passed two statutes, Nos. 46 and 118, carrying this section with others of the organic law into effect. Act No. 118, as disclosed by its title, deals primarily with the creation of road- districts. The title reads:
“An act to authorize the formation and consolidation of road and subroad districts, prescribing the procedure therefor, defining their powers and duties, and -prpviding for the issuance of liquidating bonds of consolidated road districts in certain cases.”
Section 1 declares that the police juries are empowered to create road districts and subroad districts “in the manner and subject to the limitations and restrictions herein contained.”
Section 2 says that “no * * * district * * * shall be created hereunder, until the notice hereinafter prescribed shall have been given.” The notice required to be given is as follows:
“Notice of intention to create a road district * * * shall be ordered by resolution' which shall state the territory * * * the * * * district * * * is proposed to be composed of, and the proposed boundaries thereof. Such notice shall embrace substantially all matters required to be set forth in the resolution ordering the same, and shall set forth further that the police jury ordering the same will, in open session, on a date and at an hour and place named, proceed to create the proposed * * * district.”
The concluding paragraph of this section requires the publication of said notice once a week for four weeks.
Section 3 directs the police jury to hear all objections, “pass upon the same, and its *908 decision thereon shall be final and conclusive.” It is given further power at said hearing to change the boundaries, and to include or exclude persons and property therein at pleasure; and if it determine to create such district, it shall pass “a resolution finally fixing the general boundaries * * * and giving the district a numerical designation. * * ® ” Thereafter one publication of notice of the formation of the district is required; “but if the police jury at the time it determines to create such district, shall also decide to submit to the qualified property taxpaying voters the question of incurring debt and issuing bonds of the district under the general laws of Louisiana, n5tice of the election may contain notice of the formation of the district and a description of the boundaries. ® * * Such notice of election shall be published in the manner prescribed by the general laws in relation to incurring debt and issuing bonds.”
Section 4 vests in the police jury power to “repeal any ordinance creating a road district, or may abolish a road district in its entirety, or may change or alter the boundaries thereof,” provided that no outstanding obligations are affected thereby, and provided further, notice and hearing upon any such action is given and had as in case of the formation of a district.
Sections 5 to 9, inclusive, deal with the powers, domicile, functioning, etc., of such districts, when organized.
Section 10 authorizes the formation of consolidated road districts; and section 11, dealing with the procedure therefor, reads:
“(a) The police jury shall pass an ordinance or resolution which shall specify (but need not describe) the existing road districts, or subroad districts, to be included in the consolidated road district, and their respective indebtedness both bonded and floating, shall declare that it is advisable-to consolidate the roads of the sev-eral districts (and when such is the fact, certain unorganized road territory of the parish), into a consolidated road system; and shall make an estimate of the amount of new money presently needed to enlarge and extend the district system or systems; but the amount of new money when added to the aggregate of the bonded and floating debt of the road districts included in the consolidated district shall not exceed ten per cent, of the assessed valuation of thfe consolidated road district.
“(b) Such ordinance shall be published once in the official journal of the parish.
“(c) No less than ten days after the publication of such ordinance the police jury shall call an election in such consolidated district which election shall be called, proclaimed, held, and promulgated in all particulars as near as-may be in the manner prescribed by the general laws in relation to incurring debt and issuing bonds, at which election shall be submitted the question of the issuance of consolidated road district bonds, (1) in a specified sum (which shall be the aggregate of the district or districts debt and -the new money as declared in the ordinance or resolution described in paragraph ‘a’ of this section), (2) bearing interest not exceeding a specified rate (which shall be the highest rate which any road bonds of any of the road districts bear), (3) payable annually or semiannually as the police jury may decide and (4) maturing not more than forty (40) years after the date of the issuance thereof, for the purpose of acquiring arid constructing roads the title to which shall vest in the consolidated road district.
“(d) If a majority in number and amount of the qualified property taxpayers who vote at such election shall vote in favor of such bonds the police jury shall promulgate and publish the result of such election and shall thereupon adopt and cause to be published in the official journal two ordinances; the first shall find and declare that the consolidated road district has been created, and the second shall provide for the issuance of consolidated road district bonds as hereinafter provided.”
Sections 12, 13, 14, and 15 provide tlie manner in which the bonds shall be issued, the outstanding obligations taken up, and new ones issued therefor; and sections 16 and 17 permit a parish to assume, when approved by the property taxpayers thereof, all indebtedness, bonded and .otherwise, of any or all of the road districts therein.
Section 18 declares:
“That the bonds of any road district or consolidation [consolidated] road district, author *910 ized by a majority of number and amount of property taxpayers voting at said election, be, and the same are hereby approved, ratified and confirmed, and their validity shall not be questioned.”
Sections 19 and 20 refer to maintenance taxes, and section 21 declares that, if any part of the statute is held unconstitutional, it shall not affect the remaining provisions, and that:
“This act shall be liberally construed to promote 'the co-ordination of existing systems of highways in this state, and the betterment, enlargement, and extension thereof.”
The last section repeals all laws in conflict therewith, and especially Act 30 of the Etxtra Session of 1917 and amendments thereof; but in concluding says:
“Provided that nothing in this act shall be construed to conflict with' or interpret house bill No. 6 by Mr. Smith providing for road, school, sewerage, etc., bonds.”
We have quoted and referred to the provisions of this act at length for the purpose, first, of showing its requirements; second, to contrast the same with the action of the police jury as disclosed by the allegations of the petition and its annexed exhibits; and, third, that we might discuss it in connection with the terms of Act No. 46 of the same session (house bill No. 6 by Mr. Smith, referred to in the repealing clause above quoted) and the provisions of the Constitution of 1921.
It will be noticed that in the creation and formation of road districts, consolidated or otherwise, the final authority is vested, in the police jury, subject to the requirement of notice and hearing of those in interest who may wish to complain. This, no doubt, was intended to afford, to any one who might desire, a chance, by any legitimate means, to induce the jury to ’change or modify its purpose to such extent as might be determined — in other wprds, for the bringing into play of such arguments and the force of public opinion as might be available, as a wholesome influence upon the otherwise unlimited discretion of the police jury. But, can it be said, in the light of the concluding declaration of the statute, that it should be liberally .construed to promote such undertaking, that it was intended to make those requirements conditions precedent to the existence of a district, and that a failure to do so should nullify the whole proceeding even after the matter has been submitted to and approved by a majority of the property taxpayers, and notwithstanding the period of repose, provided by the Constitution and Act 46 of the same year, has run? We think not.
With respect to any outstanding indebtedness of existing districts which may have been included within the one now under attack, both this statute and well-known constitutional inhibitions prevent its impairment. If the new obligations authorized should exceed the constitutional limitation of 10 per cent, of assessed valuation, the taxpayer has his, remedy for a reduction within legal limits without affecting the validity of the proceedings for granting the authority.
We are impressed that both the Constitution arid the Legislature have endeavored to construct a system for the issuance of bonds and voting of taxes by the several subdivisions of the state for public improvements, which, while affording to every one a fair and reasonable opportunity to be heard, both before the governing authority and the courts, nevertheless intends, after the expiration of such reasonable time, shall insure a safe and merchantable security which will command its full value in the markets of the country. This is manifest from the Act No. 118 itself, when in section 18 it attempts to validate all bonds theretofore issued, as well as in its final section specifically subordinating all of its provisions to *912 those of the earlier one of that session, No. 46.
Act No. 46, it is true, does not deal with the question of -creating districts, but with proceedings for the issuance of bonds and-voting of taxes, as its title indicates, to wit:
“An act to authorize municipal corporations, parishes and schools, road * * * districts, to incur and refund debt and issue negotiable' bonds, and regulating and prescribing the procedure therefor.”
Its opening section enumerates the several subdivisions of the state (which are the same as those named in the Constitution) and declares that they may incur debt and issue bonds “in the form and manner and subject to the limitations and restrictions herein contained.” It declares, also in conformity with the Constitution, what shall be the gov», erning authority for each of the several subdivisions ; provides for the holding of bond elections;, that such elections shall be ordered by resolution which shall state the purpose for which the debt is to be incurred, the amount, the number of years, for which the bonds are to run, and the maximum rate of interest; that notice of such election shall be given by thirty days’ publication, stating substantially its purposes; provides the form of ballot, the officers of election, and the manner of its holding, counting the ballots, and canvassing the returns, for the issuing of the bonds, maximum duration, and limit of interest, the form of the bond, for refunding bonds; and section 33 declares:
“Recital of Regularity. — Before bonds of any subdivision are issued hereunder the governing authority shall investigate and determine the regularity of the proceedings. The- resolution authorizing the bonds may direct that they shall contain the following recital: .‘It is certified that this bond is authorized by and is issued in conformity with the requirements of the Constitution and statutes of this state.’ Such recital shall be deemed to be an authorized declaration by the governing authority of the subdivision and to import that-there is constitutional and statutory authority for incurring the debts and issuing the bonds, that all the proceedings therefor are regular, that all acts, conditions and things required to -exist, happen and be performed precedent to and in the issuance of the bond have existed, happened and have been performed in due form, time, and manner as required by law, that the amount of the bond together with all other indebtedness does not exceed any limit or limits prescribed by the Constitution and statutes of' this state and that an election has been duly and regularly held, and the incurring of debt and the issuing of a negotiable bond therefor authorized by vote of a majority in number and amount of the property taxpayers, qualified to vote under the Constitution and laws of this state, who voted at an election regularly called and held for the purpose after notice published or posted in the manner required by law. If any bond be issued containing the said recital, it shall be conclusively presumed that said recital, construed according to the import hereby declared, is true and neither the subdivision nor any taxpayer thereof shall be permitted to question the validity or regularity of the obligation in any court or in any action or proceeding.”
Section 35 provides for the levying of tax,es in such manner as to insure that there will be no default in the payment of principal and interest of the bonds. Sections 36 to 40, inclusive, need not be considered for the purposes of this ease; but sections 41, 42 and 43 declare:
“Sec. 41. No Other Statutes Applicable.— This act shall, without reference to any other act of the Legislature of Louisiana, be full authority for the issue and sale of the bonds in this act authorized. No ordinance, resolution or proceeding in respect to the issuance of any bonds hereunder shall be necessary, except such as are required by this act. No promulgation or publication of any resolution, ordinance, or proceeding relating to the issuance of said bonds shall be necessary, except such as is required by this act. Any publication prescribed hereby may be made in any newspaper conforming to the terms of this act without regard to designation thereof as the official journal of subdivision.
“See. 42. Bonds issued hereunder shall have all the qualities of negotiable paper under the law merchant and shall not be invalid for any irregularity or defect in the proceedings for the issuance and sale thereof, and shall be inconfestible in the hands of bona fide* purchasers or holders thereof for value.
*914 “Sec. 43. Contests; Time Limited. — For a period of sixty days from the date of the promulgation of the result of any election held under the provisions of this act, any person in interest shall have the right to contest the legality thereof, the bond issue provided for, or the tax authorized for any cause; after which time, no one shall have any cause or right of action to contest the legality, formality or regularity of said election, tax provision or bond authorization, for any cause whatsoever. If the validity of any election, special tax or bond issue authorized or provided for under the provisions of this act be not raised within the sixty days herein prescribed, the authority to issue the bonds, the regularity thereof, and of the taxes necessary to pay the same, shall be conclusively presumed, and no court shall have authority to inquire into such’matters. If any resolution be adopted or proceeding had more than thirty days after .the promulgation of the result of the election, no contest, action or proceeding to question the validity or legality of such resolution or proceeding so adopted shall be begun in any court by any person for any cause whatsoever, after the expiration of thirty days from the date when the resolution was adopted or proceeding had.”
The last section quoted, in substance, is but a repetition of subsection (n) of section 14 of article 14 of the Constitution, which is as follows:
“(n) For a period of sixty (60) days from the date of promulgation of the result of any election held under the provisions of this section, any person in interest shall have the right to contest the legality of such election, the bond issue provided for, or the tax authorized, for any cause; after which time no one shall have any cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever. If the validity of any election, special tax or bond issue authorized or. provided f or, held under the provisions of this section, is not raised within the sixty (60) days herein prescribed, the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters. The provisions of this section shall not apply to the city of New Orleans.”
From all of this, it will be se'en that the apparent purpose was, after the expiration of sixty days from the promulgation of the result of such bond elections, to remove from doubt the validity of all bonds authorized under this section of the Constitution and the laws carrying it into effect. Of course, as heretofore pointed out in the case of - v. -, there must be at least a color of right in the authority which conducts the proceedings for holding the election and issuing the bonds. Certainly there would be nb such color of authority in the “village barber” or other agencies, which, in extreme illustrations, have been suggested in other cases. The police jury was the proper agency to create the district and to submit the question of issuing bonds and voting taxes to the taxpayers; it did create a district with well-defined limits and submitted the matter to those entitled to vote, and the latter, by considerable majority, approved the proposition; and, in these circumstances, no one can be heard to complain of anything which would have the effect of impairing “the legality of the election, the bond issue provided for, or the tax authorized for, any cause” but “ * * * the authority to issue the bonds, the legality thereof and the taxes necessary to pay the same” are “conclusively presumed.”
Where the subdivision purporting to act has jurisdiction, and there is an apparent purpose to proceed under the provisions of the Constitution and laws putting it into effect, no omission to comply with the literal terms of either can be urged to nullify the result after the running of the period of repose fixed by ’the Constitution itself.
Whatever may be said about there being a distinction, as to the prescriptive period, between proceedings for the creation of a district and those for holding the election therein after its creation for the issuance of bonds and voting of taxes, the argument is met by the .inexorable fact that an attack upon either, after the lapsing of that time, *916 amounts to an assault upon the bonds themselves, as well as the taxes for their payment, a thing which the organic law, in plain terms, says shall not be done.
For the reasons assigned, the judgment appealed from is affirmed, with costs.