### STATE EX REL. FLEURY AND TOLEDANO v. CONWAY

———

(May 26, 1928. Opinion and Decree.)
(May 8, 1928. Writ of Certiorari and Review Granted by Supreme Court.)
(July 17, 1928. Writ of Certiorari and Review Recalled by Supreme Court.)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Laws—Par. 72, 76.**
The words, "A majority in number of land owners in the said district," as used in Sec. 7 of Act 85 of 1921, means a majority of those actually signing petitions.

Appeal from District Court for Jefferson Parish. Hon. Robert L. Rivarde, Judge.

Quo warranto by State ex rel. John E. Fleury and Weaver R. Toledano (realtor) against J. J. Conway.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

C. A. Buchler, Jno. E. Fleury, of New Orleans, attorneys for plaintiff, appellee.

A. C. Higgins, of New Orleans, attorney for defendant, appellant.

JONES, J. This is a quo warranto proceeding to test title to the office of drainage commissioner of the Fourth Jefferson Drainage District of the Parish of Jeffer-

son, a district created under Act 85 of 1921.

Two questions are presented, one of law, the meaning of Section 7 of Act 85 of 1921, and one of fact, whether the petitions for appointment of J. J. Conway as a commissioner contain a majority of the total acreage of said Fourth Jefferson Drainage District.

We shall consider the legal question first, as our interpretation of the controverted section renders a decision on the question of fact unnecessary.

It is admitted by both parties that the total number of land owners in the district was 5,138, that of these 1,023 signed the Toledano petitions and 743 signed the Conway petition, neither having a majority.

Section 7 of Act 85 of 1921, the controlling law, reads as follows:

"In the ordinance creating a Drainage District under this Act, the Police Jury or Police Juries creating such District shall appoint the five (5) Commissioners who shall constitute the governing authority of such Drainage District, and who shall possess the qualifications, as provided in Section 6 of this Act. The appointments of Commissioners by the Police Jury shall be made upon the recommendation of a majority in number of acres of land owners of said proposed Drainage District, or a majority in numbers of the land owners of such district where the district contains forty or less land owners; where the proposed district has more than forty land owners embraced therein, then the said appointments shall be made upon the recommendations of twenty-five of the land owners of said district. When there is a contest over the appointment of Commissioners, the Police Jury shall give the appointment to those Commissioners who are recommended by land owners owning the majority in number of acres of land in said district, or who are recommended by a majority in number of the land owners in said

District, in the discretion of the Police Jury."

Relator contends that this section means that the Police Jury has the right to appoint the applicant whose petition is signed by the majority of participants, whereas defendant contends that Conway has a majority of the acreage and Police Jury must appoint the applicant having such majority, when neither applicant has the recommendation of a majority of the land owners in the district.

Counsel for relator and appellee argues that the general rule applicable to elections and contests should be applied in this case, to the effect that a majority of those who participate in the contest must decide the result thereof, irrespective of the total number of persons who have a right to participate in the said contest.

In this particular case under defendant's interpretation, Conway must be recommended by the owners of more than 15,500 acres of land in the district or more than 2500 land owners before he can be appointed.

The more practical and common sense solution is that the general rule applicable to elections and contests should be applied in this case, namely, that the majority of those parties participating in the contest should decide the result thereof irrespective of the total number of parties having a right to participate.

The general rule of law is well stated in the 20th C. J., p. 205, under the head "Elections," as follows:

"In the absence of a statute expressly requiring more, a plurality of votes is sufficient to elect.

"Qualified electors who failed to vote at an election are presumed to acquiesce in the expressed will of those who did. Hence a law requiring that an officer

shall be chosen or a question decided by a specified majority of the votes of a county or other civil division is generally construed to mean that the election shall be decided by the required majority of votes actually cast."

And in Volume 9, Ruling Case Law, page 1115, Sec. 117, as follows:

"Ordinarily, therefore, voters who do not choose to participate in an election are not to be taken into consideration in declaring the result. If the law requires a question to be decided or an officer to be elected by the votes of the majority of the voters of the county, this does not require that the majority of all the persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by a majority of the votes cast. And so a constitutional provision requiring the assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, means the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. Voters not attending the election or not voting on the matter submitted are presumed to assent to the expressed will of those attending and voting, unless the law providing for the election declares otherwise. This is true whether the matter is submitted at a meeting under a statute requiring the assent of a majority of all the inhabitants entitled to vote to be ascertained by taking and recording the ayes and nays of such inhabitants attending the meeting, or whether it is submitted to a decision of a majority of the voters of the polls."

In the case of Citizens and Taxpayers of DeSoto Parish vs. Williams, et als., 49 An., p. 421, the Supreme Court of this State was called upon to interpret the language of Article 242 of the Constitution relative to the voting of a special tax in aid of the construction of a railroad through DeSoto Parish.

The article in question stated that the election should be carried "by a vote of the majority of the property taxpayers in numbers and in value" and plaintiffs contended that it was necessary to obtain a majority of the total number of votes and a majority of the total taxable acreage of the parish.

Judgment was rendered in favor of the plaintiffs in the lower court, but the Supreme Court after considering the language of Article 242 of the Constitution in connection with the language used in Article 209 of the Constitution relative to the voting of special taxes for public improvements used the following language:

"But pretermitting all reference to Article 209, and confining the discussion, arguendo, to the provisions of Article 242, let us consider the phrase, 'by a vote of the majority of the property taxpayers, in numbers and in value,' and ascertain its true meaning. It is quite significant, indeed, that the phrase is, 'by a vote of the majority of the property taxpayers,' etc., instead of 'by a vote of the majority of all the property taxpayers,' etc. Between such phrases as these two, a difference has been taken by nearly all of the courts whose opinions we have examined on the subject, and with the proximate result that, in cases where the word 'all' is omitted, the decisions have been that a majority of those actually voting carries the election in favor of the tax, those not voting being presumed to have acquiesced in the result, while in those cases in which the word 'all' occurs an affirmative vote of all the property taxpayers is requisite for that purpose. The following decisions of some of the courts of other states will serve to illustrate the foregoing propositions. They are founded upon the precepts of text writers of the first ability, the trend of which may be summarized thus: That the rule to guide those to whom the question is submitted is, to take the majority of votes cast as a test, those who remain away from the polls being presumed to assent to what is done by a majority of those who vote. Their silence, when they had an opportunity to speak and change the result, is taken for consent to the result; that this is the settled doctrine in

this country in respect to the election of officers at a general election, and also at elections for the purpose of deciding any special propositions. McCrary, Contest. Elec., p. 114."

See also 253 U. S. 350, National Prohibition cases decided June 7, 1920, where the following language is used, "The two-thirds vote in each house which is required in proposing an amendment is a vote of two-thirds of the members present, assuming the presence of a quorum and not a vote of two-thirds of the entire membership present and absent. 248 U. S. 276, Missouri Pacific Ry. Co. vs. Kansas."

This interpretation not only makes the controverted section practical and effective but reconciles it with the great majority of decisions in the Appellate Courts of this country.

Furthermore, it is interesting to note that the interpretation of Art. 242 of the Constitution of 1879, made by the Supreme Court in Citizens & Taxpayers of DeSoto Parish vs. Williams, et al., 49 La. Ann. 422, 21 So. 647, has been subsequently embodied in the Constitutions of 1898, 1913 and 1921, all of which required that special taxes for drainage purposes be voted by a majority of those actually voting at the election.

It will be noted that the words to be interpreted, namely, "are recommended by land owners owning the majority in number of acres of land in said district or who are recommended by a majority in number of the land owners in said district" are no more universal in their connotation than those quoted in the cases cited above, for the word "all" is not used therein.

As defendant's able attorney has cited no authority holding to the contrary and as the decision of the lower court, which makes the application of law practical and effective, is in accord with the views of the highest courts of this country, it is hereby affirmed.