34 So.2d 384

**DRESSER et al. v. RECREATION AND PARK COMMISSION OF PARISH OF EAST BATON ROUGE.**

No. 38891.

Feb. 16, 1948.

J. Oliver Bouanchaud, of Baton Rouge, for plaintiffs.

Fred G. Benton, Edward Donald Moseley, and George Mathews, all of Baton Rouge, for defendant.

BOND, Justice.

The plaintiffs, Dr. Henry O. Dresser and W. Harry Perkins, Jr., resident property owners of the Parish of East Baton Rouge, La., are appealing from a judgment of the district court dismissing their suit, attacking the validity of an election held on October 28, 1947, and all proceedings of the defendant, Recreation and Park Commission of the Parish of East Baton Rouge, taken thereunder.

The facts and issues of the case are fully and accurately stated and, in our opinion, correctly disposed of by the trial judge in a well-considered written opinion, from which we quote the following:

"Two taxpayers brought this suit to enjoin the Recreation and Park Commission of the Parish of East Baton Rouge from issuing and selling $1,000,000.00 in tax bonds and levying a tax to service these bonds and from levying a maintenance tax of %⁄10ths of one mill on all of the taxable property of the parish as authorized at an election held in the parish on October 28, 1947. The election was held under the authority of Section 3(b) of Article 14 of the Constitution of 1921, as embodied in Act No. 387 of 1946, and an enabling statute, Act No. 246 of 1946, adopted by the legislature at the same session.

"The plaintiffs raise a number of points as to the validity of the election and as to certain steps now being taken by the Recreation Commission under the authority of the election. It is admitted, and it is otherwise shown by documents attached to the plaintiffs' petition, that the election carried by a vote of more than six to one both as to the electors participating therein and as to the property voted. It is also admitted that the bond and tax money are to be used to make certain capital investments and to maintain a comprehensive recreation and park program for all of the people of the Parish of East Baton Rouge to combat juvenile delinquency and to provide character building and health and recreational activities for the youth of the parish as well as a total recreational program. A stipulation has been filed in which it is shown that the issues of the case are vital to the interest of the people of the parish, and in which it is conceded that the program has the overwhelming indorsement of all of the people.

"The plaintiffs argue that Section 3(b) of Article 14, hereafter called the amendment, is vague and indefinite in that it uses in one place the language 'public taxpayer' instead of using the language 'property taxpayer,' and in that it fails to specifically provide whether the majority called for thereunder is to be based upon all of the qualified taxpaying electors of the parish, or only upon the majority who participated in the election. In this connection it is pointed out that Act No. 246 of 1946, the concurrent enabling statute, requires any proposals submitted to be approved or rejected by only a majority of property taxpayers of the parish qualified to vote 'who participate in any such election.' The language of the said amendment does not so specifically provide. It is contended that although the election carried by the majority shown both as to the electors participating, and as to the amount of property involved, there is nothing in the record to show whether this was a majority of all of the eligible taxpayers or of only those who took part in the election. The suggestion is made that since the amendment is silent in defining

this majority that there is in effect a conflict between the amendment and the act, and that if this is true the amendment must govern, and that here in order to validate the proposals acted upon a majority of all of the eligible taxpayers was required.

"The respondent Commission filed exceptions to the jurisdiction of the court 'ratione materiae,' a plea of prescription, and an exception of no cause or right of action and also an answer on the merits of the case. The petition, answer and stipulations show all of the relevant facts; and since the issues are strictly legal and can be disposed of upon the merits to eliminate any doubt as to the law governing the case, the merits will first be considered.

"The principal point made is that the said amendment is vague and indefinite and is in conflict with the act relied upon and thus does not afford constitutional sanction for the said act. The amendment reads as follows:

" 'The Legislature shall have the full power and authority to enact a law creating a Commission to be known as the Recreation and Park Commission for the whole of the Parish of East Baton Rouge, the territorial authority of which shall be inclusive of the City of Baton Rouge, and which shall represent and constitute a public corporation, and shall have all the powers of such corporation, shall have perpetual existence, shall have the right

and power to incur debt and contract obligations, to sue and be sued, and to have a corporate seal; to provide the number and method of selecting the persons who shall compose the said Commission, by election, designation, or appointment, as the Legislature may determine, and to define the powers and duties of the said Commission; to provide that the said Commission shall be a subdivision of the State of Louisiana within the meaning of the statutes of the State relative to incurring debts and issuing negotiable bonds therefor; to provide that the said Commission shall have the power to propose to the tax payers of the Parish a debt and to issue negotiable bonds therefor and to incur a tax for the servicing of said bonds, and if authorized by both a majority in number and amount of the public tax payers of the parish, to incur such debt and to issue negotiable bonds therefor, and to impose a tax for the payment of said bonds in principal and interest, provided that the bonds shall run for a period not to exceed 40 years, and shall be sold at public sale for not less than par value and for an interest rate not to exceed 5%; to authorize the said Commission in addition to the foregoing to propose to levy a tax upon all of the taxable property of the Parish, as shown by the assessment rolls of the Parish, not exceeding however one mill on a dollar of assessed valuation in any one year, and if authorized to do so by a majority in num-

ber and amount of the duly qualified tax payers qualified to vote under this Constitution and the laws of the State, to actually levy from year to year a tax upon all the taxable property of the Parish as shown by the assessment rolls not exceeding one mill on a dollar of assessed valuation, as the said Commission from year to year may determine, for the purpose of providing current revenue for public recreation and park purposes; and to invest in the said Commission the power of expropriation.'

"It is thus provided that as to the bonds and the incidental tax the language is 'both a majority in number and amount of the public tax payers of the parish'; and as to the maintenance tax the language is 'by a majority in number and amount of the duly qualified tax payers', without the amendment otherwise defining the majority required to approve any specific proposal. On the other hand the said Act No. 246 of 1946 in Section 9 reads as follows:

" 'That no tax of any kind shall be levied and no bonds shall be issued hereunder until they have been authorized by both a majority in number and amount of the property tax payers qualified to vote under the Constitution and laws of this state who vote at an election held hereunder. * * *'

"It is contended that the language 'public tax payers qualified to vote' means noth-

ing intelligible, and that in any event upon the showing made here while it is conceded that the election carried by a majority of more than six to one there is nothing in the facts or in the stipulations to show that the participants represented a majority of all of the eligible qualified property taxpayers of the parish.

■ "The Court believes that the language 'public taxpayers of the parish' used in the first part of the amendment necessarily means 'property taxpayers.' The other portion of the amendment dealing with the one mill maintenance tax, using the language 'by a majority in number and amount of the duly qualified tax payers qualified to vote' and the provision of Act No. 246 of 1946 which is in pari materia, where the language employed is 'authorized by both a majority in number and amount of the property taxpayers qualified to vote' make this conclusion inescapable.

■ "The general policy of this state in regard to tax matters of this nature is to authorize the tax by a vote of the majority of the property owners affected who are qualified electors. Any other interpretation is unreasonable. No tax can be legally voted upon property in this state unless it is sanctioned by the eligible property taxpayers. Here, in any event, the lawmakers in adopting the amendment could not have had in mind one category of taxpayers as to the majority dealing with the one mill tax, and some other category of taxpayers as to any proposed bond

issue, where from the whole legislation it is plain that only one subject matter was involved, and that indeed any and all proposals were to be voted upon at one and the same time as was done in this case.

■ "The suggestion that there is any conflict between the amendment and the act, and that where this is true the amendment must necessarily govern, and that therefore here the majority anticipated is of all the eligible taxpayers rather than those actually participating in the election is without merit. Plainly all that is meant here is a majority of those participating in the election.

■ "The consistent general policy of the law is this state in matters of this nature is to require only a majority in number and amount of those participating in the election. Earlier statutes must have been within the knowledge and view of the legislature which adopted the constitutional amendment in the light thereof. In Volume 50 of American Jurisprudence, Section 354, we find the following:

" 'In the enactment of a statute, earlier acts on the same subject are generally presumed to have been in the knowledge and in view of the legislature which is regarded as having adopted the new statute in the light thereof and with reference thereto. Therefore, in the construction of a statute, reference may be made to earlier statutes on the subject, which are regarded as "in pari materia" with the latter statute.'

"And in Volume 50, Section 299 of the same authority, it is said:

" 'Authority is not wanting to the effect that in interpreting an ambiguous statute the courts may among other matters take into consideration the general policy of the law, or the settled policy of the state, in so far as it may throw light on the legislative intention, and that a statute should be interpreted in the light of, and to effectuate, such policy, where it is clearly deducible from consistent acts of the legislature, or where the statute is a part of other legislation designed as a whole to establish an expressed state policy. It has even been presumed that the legislature intended that the statute should be construed in the light of the settled and uniform policy of the law relating to the subject matter, and that there is no intention to depart from any established policy of the law. * * *'

"There is no instance in the law of this state where a bond or tax proposal of any kind has ever been made dependent upon a majority vote of all of the eligible taxpayers. Generally, only a few people actually participate in these elections, but the assumption must be made that any who fail to exercise their voting privilege are presumed to acquiesce in the will of the active majority. In this case it is stipulated between the parties that while the actual percentage in relation to all is not exactly known, that the number of qualified taxpaying electors who took part in the

election is greatly in excess of the number ordinarily participating in similar elections.

"If there were a real conflict here between the amendment and the act, the amendment would, of course, govern. Here, however, the amendment is merely silent as to what kind of majority is required, and the enabling statute which was enacted by the legislature at the same time and which is a part of the same plan is plain in defining this majority as restricted to those who 'vote at any election held hereunder.' The whole legislation is to be considered in arriving at a proper conclusion as to what the lawmakers had in mind as to this majority. Here if the amendment had definitely called for a majority of all eligible taxpayers there would be a conflict, and the amendment would necessarily govern, but where the amendment is silent upon the point and where the enabling statute is clear in its definition of this majority and is consistent with the general policy of the state in respect to matters of this kind there is no question but that only a majority of the qualified electors participating was required.

"The point was considered by the Supreme Court of this State in the case of Citizens & Taxpayers of DeSoto Parish v. Williams, et al., 49 La.Ann. 422, 21 So. 647, 653, 37 L.R.A. 761. There a special tax had been voted in aid of the construction of a railroad through DeSoto Parish. The election had been held under Article 242 of the Constitution in which it was provided that the outcome of the election was to be determined 'by a vote of the majority of the property taxpayers in numbers and in value,' and in that case it was argued as here that it was necessary to obtain a majority of the total number of votes and a majority of the total taxable acreage of the parish. The lower court sustained this contention. The Supreme Court of this State in interpreting the said Article 242 in relationship to Article 209 used the following language which this Court believes is exactly applicable to the point here involved:

" 'But pretermitting all reference to Article 209, and confining the discussion, arguendo, to the provisions of Article 242, let us consider the phrase, "by a vote of the majority of the property taxpayers, in numbers and in value," and ascertain its true meaning.

" 'It is quite significant, indeed, that the phrase is, "by a vote of the majority of the property taxpayers," etc., instead of "by a vote of the majority of all the property taxpayers," etc.

" 'Between such phrases as these two, a difference has been taken by nearly all of the courts whose opinions we have examined on the subject, and with the proximate result that, in cases where the word "all" is omitted, the decisions have been that a majority of those actually voting carries the election in favor of the tax, those not voting being presumed to have acquiesced in the result, while in those

cases in which the word *"all"* occurs an affirmative vote of *all* the property taxpayers is requisite for that purpose.

" 'The following decisions of some of the courts of other states will serve to illustrate the foregoing propositions.

" 'They are founded upon the precepts of text writers of the first ability, the trend of which may be summarized thus:

" 'That the rule to guide those to whom the question is submitted is, to take the majority of votes cast as a test, those who remain away from the polls being presumed to assent to what is done by a majority of those who vote. Their silence, when they had an opportunity to speak and change the result, is taken for consent to the result; that this is the settled doctrine in this country in respect to the election of officers as a general election, and also at elections for the purpose of deciding any special proposition. McCrary, Contest. Elec. p. 114 * * *.'

"In 29 C.J.S., Elections, § 242, the rule is expressed in the following manner, under the title 'Elections':

" 'It is a fundamental principle of popular government that in elections the will of the majority, expressed in the manner authorized by law, must prevail, unless the constitution otherwise provides. Constitutional provisions requiring a majority vote may be so worded as to require an affirmative assent to be given by the requisite majority of all those entitled to vote.

Generally, however, such a provision is construed to mean that the election shall be decided by the required majority of the votes actually cast, irrespective of the number of persons entitled to vote, since qualified electors who fail to vote are presumed to acquiesce in the expressed will of the majority of those who do. * * *'

"The principle was applied by the Court of Appeals for the Parish of Orleans in the case of State ex rel. Fleury and Toledano v. Conway, 8 La.App. 717, et seq., in which a writ was denied by the Supreme Court wherein the court quoted from Volume 9, Ruling Case Law, page 1115, Section 117, the following:

" 'Ordinarily, therefore, voters who do not choose to participate in an election are not to be taken into consideration in declaring the result. If the law requires a question to be decided or an officer to be elected by the votes of the majority of the voters of the county, this does not require that the majority of all the persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by a majority of the votes cast. And so a constitutional provision requiring the assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, means the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. Voters not attending the election

or not voting on the matter submitted are presumed to assent to the expressed will of those attending and voting, unless the law providing for the election declares otherwise. This is true whether the matter is submitted at a meeting under a statute requiring the assent of a majority of all the inhabitants entitled to vote to be ascertained by taking and recording the ayes and nays of such inhabitants attending the meeting, or whether it is submitted to a decision of a majority of the voters of the polls.'

"The amendment here refers only to the majority in number and amount of the taxpayers and the word 'all' is omitted, while in the enabling statute, as shown, the provision is added that the majority is to be determined by those participating. The conclusion seems inevitable that the latter majority is what the lawmakers had in mind."

It is our opinion that the other contentions as to the adoption of a budget, the designation of fiscal agents, the anticipation of revenues by the issuance of certificates of indebtedness are all equally without merit.

■ In Section 3 of Act No. 246 of 1946, the Recreation and Park Commission of the Parish of East Baton Rouge is constituted a corporation with "all the powers of public corporations", with permission "to incur debts and contract obligations, to sue and to be sued * * *."

Construing this provision with the laws of this State relative to public corporations upon the subject of borrowing of money, particularly Act No. 79 of 1916, § 1, this Commission in order to pay for current expenses for any year, is authorized to anticipate the revenues of such year and to borrow the money to pay such expenses and to issue negotiable certificates of indebtedness covering said loan.

The context of Act No. 246 of 1946, as well as the purpose of the law places no restrictions upon the Recreation and Park Commission but, on the other hand, justification exists for extending the privilege of anticipating revenues to said commission as applied to other public corporations.

The opinion of the trial judge continues as follows:

"For all of the foregoing reasons, this . Court believes that the exception of no cause or right of action should be sustained.

■ "In any event, however, insofar as the said election is concerned and the . other steps taken in pursuance to it the Court has concluded that all of the contentions relied upon by the plaintiffs are foreclosed under the provisions of Section 14(n) of Article 14 of the Constitution of 1921, as amended, and Act No. 246 of 1946, and Act No. 46 of 1921, Ex. Sess., as amended. Under these laws the right to contest the legality, formality and regularity of the said election is prescribed against by the lapse of sixty days,

and this Court is denied jurisdiction to inquire into such matters. The Court has therefore also concluded that the special plea of prescription of sixty days relied upon by the respondent, and the exception to the jurisdiction 'ratione materiae' should both be sustained.

"Here the election was held on the 28th day of October, 1947, and the results thereof were canvassed and the returns promulgated at a meeting held on October 31st, 1947, and the ordinance promulgating these results was published in the official journal of the parish of the 19th day of November, 1947. The sixty day prescriptive period had thus expired before this suit was filed.

"Section 43 of Act No. 46 of 1921, Ex. Sess., provides as follows:

" 'For a period of sixty days from the date of the promulgation of the result of any election held under the provisions of this act, any person in interest shall have the right to contest the legality thereof, the bond issue provided for, or the tax authorized for any cause; after which time, no one shall have any cause or right of action to contest the legality, formality or regularity of said election, tax provision or bond authorization, for any cause whatsoever. If the validity of any election, special tax or bond issue authorized or provided for under the provisions of this act be not raised within the sixty days herein prescribed, the authority to issue the bonds, the regularity thereof,

and of the taxes necessary to pay the same, shall be conclusively presumed, and no court shall have authority to inquire into such matters. If any resolution be adopted or proceeding had more than thirty days after the promulgation of the result of the election, no contest, action or proceeding to question the validity or legality of such resolution or proceeding so adopted shall be begun in any court by any person for any cause whatsoever, after the expiration of thirty days from the date when the resolution was adopted or proceeding had.' (Volume 6, Dart's Statutes, page 545, Section 8896.)

"In Section 9 of Act No. 246 of 1946, which is the enabling statute with which we are here concerned, we find the following provision:

" 'Except as is herein especially provided, any such election and all steps connected therewith, and the imposition of any tax or the issuance and sale of any bonds thereunder shall be carried out as is provided by Act No. 46 of the Laws of Louisiana, 1921, as now or hereafter amended, including the manner of calling and conducting such election, and canvassing and promulgating the results thereof.'

"Thus this prescriptive period is incorporated into Act No. 246 of 1946 by reference.

"Exactly the same language is used in Section 43 of Act No. 46 of 1921, Ex. Sess., as is contained in Article 14, Sec-

tion 14(n), of the Constitution of 1921. The cases under Article 14, Section 14(n), must therefore be taken into account in arriving at the proper application of these laws to the issues here presented. The Supreme Court of this State has maintained the sixty day contest period in all cases where the legality, formality or regularity of any such election, tax provision or bond authorization was involved whatever the basis of complaint and whether the issues involved were legal or constitutional. Roberts et al. v. Evangeline Parish School Board, 155 La. 331, 99 So. 280; Hardin v. Police Jury of Vernon Parish, 155 La. 899, 99 So. 690; Chiara v. Lafourche Terrebonne Drainage District, 159 La. 422, 105 So. 418; Gravity Drainage District v. Caldwell & Co., 171 La. 58, 129 So. 668; Nanney v. Town of Leesville, 198 La. 773, 4 So.2d 825; Browning v. Webster Parish School Board, 212 La. 139, 31 So.2d 621; Roy v. City of Lafayette, 168 La. 1081, 123 So. 720.

"Here no constitutional question is involved. The only serious point at issue is whether sufficient votes were cast at the election to sustain the result. If there were a conflict between the constitutional amendment and the enabling act, the conflict would be resolved in favor of the amendment and the question would still remain as to the adequacy of the vote cast at the election. This is a legal question which is foreclosed by Section 43 of the said Act No. 46 of 1921, Ex.Sess.

The foregoing cases show that the Supreme Court has applied the sixty day prescriptive period in denying the jurisdiction of the Court to inquire into any kind of legal or constitutional question where the election was held upon some semblance of legal authority.

"In the Roberts case, supra [155 La. 331, 99 So. 282], the first decision by this Court under Article 14, Section 14(n), the bond issue and tax were attacked on the ground that the statutes under which a school district was created were in conflict with Article 250 of the Constitution of 1898 and other provisions of the Constitution of 1921. In speaking of the language used in Section 14(n) identical with the language employed in Section 43 of Act No. 46 of 1921, Ex.Sess., the Supreme Court of this State made the following observations:

" 'It seems to us that language could not be used to express more strongly the very patent intention of the constitutional convention, to wit, that after 60 days have elapsed without any attack upon a bond issue and tax voted by property taxpayers under color of law, any person may safely purchase such bonds and feel secure that the taxes levied to pay them will be sustained by the courts of this state. The constitutional convention had the right to say this; it did say it, and that is the end of the matter.'

"In Hardin case, supra [155 La. 899, 99 So. 695], the Supreme Court had the

following to say·after quoting Section 43 of Act No. 46 of 1921, and Article 14, Section 14(n) of the Constitution:

" '* * * The apparent purpose was, after the expiration of sixty days from the promulgation of the result of such bond elections, to remove from doubt the validity of all bonds authorized under this section of the Constitution and the laws carrying it into effect. Of course, as heretofore pointed out in the case of ——— vs. ———, there must be at least a color of right in the authority which conducts the proceedings for holding the election and issuing the bonds. Certainly there would be no such color of authority in the "village barber" or other agencies, which, in extreme illustrations, have been suggested in other cases. * * *

" 'Where the subdivision purporting to act has jurisdiction, and there is an apparent purpose to proceed under the provisions of the Constitution and laws putting it into effect, no omission to comply with the literal terms of either can be urged to nullify the result after the running of the period of repose fixed by the Constitution itself.'

"In the case of Chiara [159 La. 422, 105 So. 419] supra, the Supreme Court made the following observations:

" '* * * the Constitution of this state and the statutes passed pursuant thereto has not only granted to a taxpayer, whether resident or nonresident, the unlimited and unrestricted right to question the validity or the legality of an election authorizing a bond issue and the levy of a tax for drainage works, but has expressly and in terms unmistakable withheld from such taxpayer the right judicially to raise such questions, unless he comes into court with such complaints within a period of 60 days after the promulgation of the returns of any such election. We think it will suffice to quote only from Act 225 of 1916, Act 46 of 1921 (Ex.Sess.), and the constitutional provision of 1921.'

"In the case of Gravity Drainage District, supra, the bonds of a drainage district were brought in issue on the grounds that the board purporting to act as the governing body was not in reality the valid and properly constituted agency of the district, that the organization of the drainage district was void, that the bonds were not issued for a purpose authorized by the constitution, and that the proposition submitted to the voters did not definitely state the number of years for which the bonds were to run. The Supreme Court of this State held in respect to all of these matters that it had no authority whatever to inquire into the issues presented in the face of the plea of prescription of sixty days under the said Article 14, Section 14(n).

"For these reasons judgment will be rendered herein in favor of the defendant as prayed for declaring the validity of the election and all proceedings subsequently taken by the Recreation Commission there-.

under, recalling and vacating the rule nisi, and dismissing the plaintiffs' suit at the plaintiffs' cost.

"Baton Rouge, Louisiana, this 6 day of February, 1948."

For these reasons the judgment appealed from is affirmed.

McCALEB, J., concurs in the decree.